Circuit Court for Montgomery County
Case No. 409897

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 571

September Term, 2016

_____

MONTGOMERY COUNTY PUBLIC
SCHOOLS

v.

BRIAN DONLON

_____

Leahy,
Reed,
Shaw Geter,

JJ.

_____

Opinion by Leahy, J.

_____

Filed: August 30, 2017

This case concerns the interpretation of the Maryland Whistleblower Protection Law, Maryland Code (1993, 2015 Repl. Vol., 2016 Supp.), State Personnel and Pensions Article ("SPP"), § 5-301, *et seq.* (the "WBL"), and whether it applies to employees of county boards of education.[1]

A high school teacher in the Montgomery County Public School system, Appellee Brian Donlon ("Donlon" or "Appellee"), informed the press that he had discovered that Richard Montgomery High School ("RMHS") was inflating its Advanced Placement ("AP") statistics.  Donlon then filed a whistleblower complaint against Montgomery County Public Schools ("MCPS" or "Appellant" or the "County Board") with the Maryland Department of Budget and Management ("DBM").  He alleged that after he disclosed the statistics inflation, his superiors retaliated against him by, among other things, assigning him undesirable courses to teach.  DBM dismissed his complaint, finding that it did not have jurisdiction because Donlon is not an employee of the Executive Branch of State government.  Donlon appealed this decision, and an administrative law judge ("ALJ") in the Office of Administrative Hearings ("OAH") affirmed.  Donlon then filed a petition for judicial review in the Circuit Court for Montgomery County.  After argument, the circuit court reversed the administrative decision.

MCPS appealed, presenting the following question for our review: "Did the Circuit Court err[] in finding, contrary to the determinations of the DBM and the ALJ, that Donlon

---

[1] As we explain *infra*, the General Assembly has since changed the law so that public school teachers soon will have an independent method to bring a whistleblower complaint. *See* 2017 Md. Laws, ch. 730 (H.B. 1145).

is an employee in the Executive Branch of State government within the scope of the WBL?" MCPS has also filed a motion, requesting that we take judicial notice of a bill passed during the 2017 legislative session, H.B. 1145—the Public School Employee Whistleblower Protection Act.[2]

We hold that the WBL does not apply to public school teachers employed by county boards of education because they are not employees of the Executive Branch of State government. We conclude that Donlon does not qualify as an employee of the Executive Branch of State government under any common law test. We also determine that MCPS is not judicially estopped from arguing that MCPS is not a State agency. Accordingly, we reverse the decision of the circuit court and remand with instructions to reinstate the decision and order of the OAH.

## BACKGROUND

### A. The Whistleblower Complaint

Donlon filed his whistleblower complaint against MCPS[3] with DBM on December 10, 2014. In the complaint, Donlon charges that RMHS was inflating its AP statistics by awarding credit to students for AP classes on report cards and transcripts when those students were instead enrolled in the Middle Years Program ("MYP").[4] Donlon alleged

---

[2] We address this motion within the opinion.

[3] The legal name for Montgomery County Public Schools is "the Board of Education of Montgomery County." *See* Maryland Code (1978, 2014 Repl. Vol.), Education Article ("EA"), § 3-104.

[4] Donlon alleged that those classes did not meet AP criteria set by the College Board.

2

that after discovering this in early 2012, he spoke to Senator Paul Pinsky, a state legislator involved with educational issues, who brought the issue to Donna Hollingshead, the Community Superintendent. After Hollingshead failed to address the issue, Donlon contacted Jay Matthews, a reporter at the Washington Post, who then contacted MCPS. Kim Lansell, the chair of Donlon's department, allegedly stopped speaking to Donlon when she learned that Donlon contacted Matthews. Donlon further alleged that Lansell and Josh Neuman-Sunshine, the assistant principal, falsely accused him of not preparing a substitute teacher properly.

Donlon also related in his complaint that in April 2012, he contacted the Maryland Gazette about the AP statistics inflation, and that the Maryland Gazette published a story on the issue. Donlon alleged the school retaliated against him for speaking to the newspaper about the story when in the fall semester he was assigned no AP courses. In June 2013, Donlon was assigned to teach AP Psychology, a course that he had requested not to teach because he believed that he did not have the requisite background to teach it. The next year, in June 2014, MCPS reassigned Donlon as a floating teacher.[5] Later in October 2014, Donlon inquired of Lansell why he was teaching a large class without a paraeducator, and Lansell responded very rudely to him.

On October 24, 2014, Damon Monteleone (the school's new principal), and Lansell called Donlon to a meeting to speak to him about how he had been absent from work 42

---

[5] According to Donlon's complaint, a floating teacher "[i]s required to travel from classroom to classroom utilizing other teachers' rooms during their off periods." His complaint further alleges that all teachers are required to be floating teachers periodically, but that there were other teachers who had not been assigned this duty since 2004.

3

times during the 2012-13 school year. Donlon responded that most of those absences were due to union meetings, teacher trainings, and the like.

The complaint alleged that these incidents constituted illegal retaliation against him under the WBL, SPP § 5-301, *et seq.* Donlon requested compensatory damages, punitive damages, costs and attorney's fees, and equitable relief.

## B. Administrative Proceedings

On January 27, 2015, the Office of the Statewide Equal Employment Opportunity Coordinator ("OSEEOC"), as the designee of the Secretary of DBM, sent a letter to Donlon dismissing his complaint, stating:

> The Office conducted a thorough review of your complaint and the response and documents submitted by the Respondent. Your complaint does not meet the jurisdictional requirements of the Maryland Whistleblower Law. In accordance with SPP § 5-301, the Maryland Whistleblower Law applies to employees and State employees who are applicants for position in the Executive Branch of State government. . . . MCPS [] is not an Executive Branch agency of State government, and therefore your complaint is not subject to investigation by this office. Accordingly, your complaint is dismissed.

Donlon appealed this decision to the OAH on February 6, 2015, challenging DBM's determination that MCPS is not an executive branch agency of the State government. MCPS filed a motion to dismiss arguing, *inter alia*, that Donlon was not an employee of the Executive Branch of State government and, as a result, Donlon did not fall under the purview of the WBL. An ALJ held a motions hearing on August 3, 2015.

At the hearing, MCPS called Donlon as its first witness. He testified that MCPS was his employer. MCPS entered Donlon's teaching contract into evidence, noting that the State of Maryland was not a signatory to the contract. MCPS also offered Donlon's

4

W-2—which listed MCPS as his employer. MCPS then presented the affidavit of Dhiren Shah, the Deputy Director of the central payroll bureau for the Comptroller of Maryland, swearing that there were no current or former State employees with the name of Brian J. Donlon. Nonetheless, Donlon testified: "I believe I'm a certified teacher by the State of Maryland and that the Montgomery County Public Schools is an extension of the State Board, so that would make me a Maryland employee of the Executive Branch in that regard."

MCPS then entered into evidence the affidavit of Steven Serra, director of the Office of Human Resources for the Maryland State Department of Education ("MSDE"), swearing that Donlon had never been employed by MSDE. MCPS also entered into evidence the collective bargaining agreement between MCPS and its teachers, to which the State was not a party, as well as a document demonstrating that State holidays and MCPS holidays do not correspond. MCPS then listed all of the principal departments of the Executive Branch of the State government, one-by-one, and asked Donlon whether he was employed by each. Donlon responded "no" to each question. Donlon testified, however, that it was his *belief* that because all MCPS employees were ultimately answerable to MSDE, that all MCPS employees were State employees.

MCPS then called Jeffrey Martinez, the director of recruitment and staffing in the Office of Human Resources and Development for MCPS. Martinez testified that he (Martinez) was an employee of the Board of Education for MCPS and that attending State training sessions did not convert him into a State employee. He testified that only the Board of Directors for MCPS, not the State Board of Education (the "State Board"), has

5

the authority to hire teachers for MCPS. He added that the County Board, not the State Board, has the authority to fire teachers, although a teacher could appeal that termination to the State Board. MCPS then moved into evidence an article from the Baltimore Sun that listed the salaries of all State employees. This list did not include Donlon. Martinez explained that the superintendent and the County Board, not the State Board, were responsible for overseeing the day-to-day operations of MCPS and for preparing the curriculum. Neither MSDE nor the State Board controlled the curriculum for MCPS.

Stanislaw Damas, the director of association relations for MCPS, testified next. Damas related that he coordinates collective bargaining and negotiations between MCPS and the three unions representing MCPS employees, and that he handles grievances and complaints through the contract grievance and administrative complaint procedures. He testified that the parties to the MCPS teachers' agreement are the County Board and the Montgomery County Education Association (the Montgomery County teachers' union).

Donlon then testified on his own behalf. In support of his view that he actually worked for the State, he stated that, after MCPS terminates a person, that person may eventually appeal his termination to the State Board and that MCPS receives funding from the State to start new schools. Donlon also offered that the State Board sets general voluntary standards on which most county educational curricula are based; that students have statewide testing; and that the State issues high school diplomas. Finally, Donlon testified that he participates in the statewide retirement system for teachers, which is administered by the State of Maryland.

In closing, MCPS argued that the WBL applied only to State employees of the

6

executive branch and that Donlon was not a State employee. MCPS contended that the mere fact that the State issued Donlon a license to teach did not resolve this inquiry because the State regulates many professions, such as nursing, and no one would contend that all nurses were State employees. MCPS further maintained that Donlon, by his own admission, did not fall under any of the principal departments of the Executive Branch of the State government. MCPS asserted that the county boards of education are not divisions or units within MSDE. However, MCPS also noted that Court of Appeals precedent recognizes that county boards of education can be considered State agencies for some purposes and local government units for other purposes.

During closing, Donlon argued that the County Board was a State agency because the State Board exercises such a high level of control over the County Board. Donlon further argued that MCPS should be judicially estopped from arguing that it was not a State agency when it had previously asserted sovereign immunity pursuant to the Eleventh Amendment in federal court in other cases. Finally, Donlon argued that good policy mandated that public school teachers be covered by the WBL.

On September 1, 2015, the ALJ issued his decision, finding that there was no jurisdiction to hear the whistleblower claim because Donlon was not an employee of the Executive Branch of State government. The ALJ noted that the State government's executive branch contains 19 principal departments, each of which contain subordinate units, and that MCPS is not among them. The ALJ also observed that the State Board establishes policies and guidelines throughout the State, but that it is the county boards of education that employ principals and teachers. The ALJ found that Donlon submitted no

7

evidence that he was an employee of the executive branch and that there was no employer/employee relationship between Donlon and the executive branch. Accordingly, the ALJ concluded that Donlon was not an executive branch employee, that he could not bring a whistleblower complaint pursuant to the WBL, and that DBM and the OAH did not have jurisdiction to hear the case. Thus, the ALJ granted MCPS's motion for summary decision and dismissed Donlon's complaint.[6]

## C. Review in the Circuit Court

Donlon then filed a petition for judicial review in the Circuit Court for Montgomery County. At a hearing on the petition on April 26, 2016, Donlon refined his argument, asserting that he was simultaneously an employee of both MCPS and the State government—that there was a dual employment relationship. Donlon further argued that MCPS should be estopped from arguing it was not an agency of the State government because MCPS routinely asserts sovereign immunity pursuant to the Eleventh Amendment in federal courts.

MCPS responded that there were no facts in the record to support the proposition that Donlon was a State employee. MCPS further argued that an entity may qualify as a State agency for some purposes, while being a local agency for other purposes.

The circuit court, expressing some consternation with MCPS, questioned MCPS on whether a teacher could be an employee of the State government because MCPS had an

---

[6] Under SPP § 5-311(c) & (e), the decision by the ALJ is final, and a party may petition for judicial review of the decision in the circuit court.

8

independent personnel system, relying on SPP § 5-301.[7]  MCPS responded that this argument was not raised below.  The court also found it "deeply troubling" that MCPS could qualify as a State entity for Eleventh Amendment immunity purposes, but not for WBL purposes.  The court then reversed the ALJ's decision in an order entered on May 5, 2016.  On May 24, 2016, MCPS timely appealed the circuit court's order.

## DISCUSSION

## I.

### The Maryland Whistleblower Protection Law

On appeal, MCPS presents most of the same arguments that it had throughout the proceedings below.  MCPS contends that Donlon is an employee of the County Board and is not a State employee, and that the WBL applies only to State employees of the Executive Branch of the State government.  MCPS points out that the facts adduced at the ALJ hearing concerning Donlon's employment relationship demonstrate that Donlon is not a State employee.  MCPS argues that, pursuant to the employment factors the Court of Appeals set out in *Whitehead v. Safway Steel Products, Inc.*, 304 Md. 67 (1985), Donlon is not an employee of the State.

MCPS asserts that there are nineteen principal departments of the Executive Branch

---

[7] SPP § 5-301 provides: "This subtitle applies to all employees and State employees who are applicants for positions in the Executive Branch of State government, *including a unit with an independent personnel system*."  (Emphasis added).  We construe this statute to mean that a unit may still be within the Executive Branch of State government (for purposes of the WBL) if it has an independent personnel system; rather than to mean that if a unit has an independent personnel system, that, in and of itself, is evidence that the unit is a State agency.

of State government and that county boards of education are not included among these departments, nor any subsidiary thereof. MCPS further contends that, pursuant to precedent from the Court of Appeals, county boards of education are not divisions or units within MSDE.[8] Finally, MCPS maintains that the DBM's determination that the County Board was not within the executive branch is entitled to substantial weight because it is the agency responsible for overseeing the WBL.

Donlon responds that a plain reading of the statutory language of SPP § 5-301 demonstrates that he is protected under the WBL, although he does not precisely explain how the statutory language demands this result. Donlon argues that he is an employee of

---

[8] MCPS also argues that the SPP § 5-301 "independent personnel system" argument broached by the circuit court and adopted by Donlon during the judicial review hearing was not preserved because Donlon did not advance this argument at the hearing before the ALJ. Nonetheless, addressing the merits of this argument, MCPS contends that an entity must first be within the executive branch for the WBL to apply, and that, clearly, any public agency with an independent personnel system (such as MCPS) does not qualify under the WBL. Donlon, of course, responds that the "independent personnel system" argument, raised by the circuit court, is preserved, and, further argues that MCPS's failure to raise a preservation argument in the circuit court waives any argument to that effect now. We note that Donlon did not use the phrase "independent personnel system" once during the administrative proceedings. Therefore, that argument is waived. *See Cicala v. Disability Review Bd. for Prince George's Cnty.*, 288 Md. 254, 261-62 (1980) (One who knows or should have known that an agency has committed error, yet fails to object "in any way or at any time during the course of the administrative proceeding, may not raise an objection for the first time in a judicial review proceeding." (citations omitted)). Further, the record reflects that MCPS, in fact, did complain to the circuit court that Donlon did not raise the "independent personnel theory" argument during the administrative proceedings. Notwithstanding Donlon's failure to preserve the issue, we take judicial notice of the fact that the Department of Legislative Services' Office of Policy Analysis's *Maryland State Personnel, Pensions, and Procurement* handbook does not list any county board of education as a "Salary Setting Authorit[y] and Personnel System[] Independent of the State Personnel and Management System." Thus, we conclude that MCPS is not a "unit with an independent personnel system" within the Executive Branch of State government, within the meaning of SPP § 5-301.

the State government because the State Board of Education has broad authority and supervisory control over local school boards. Donlon contends that the State Board's authority over appeals of county board termination decisions supports his argument that public school teachers are State employees for purposes of the WBL. Donlon then argues that the ALJ's analysis of the *Whitehead* factors was incorrect because of the State's broad control over local board issues, contending that the State Board is the "ultimate arbiter of any decision regarding the suspension or termination of Donlon's employment, and should the situation warrant, any other decision made by MCPS." Donlon next asserts that he is a dual employee of MCPS and the State Board, working for the MCPS on a day-to-day-basis, but ultimately controlled by the State Board and MSDE.

Donlon urges that local boards of education have long been considered by Maryland courts to be agents of the State. He insists that an entity cannot be an agent of the State for some purposes, but not a State agent for other purposes. From the premise that county boards of education are agents of the State, Donlon pivots, contending that they must be agents of the executive branch because they are not part of the judicial or legislative branches.

In reviewing an administrative agency's decision, we "must look past the circuit court's decision to review the agency's decision." *Sizemore v. Town of Chesapeake Beach*, 225 Md. App. 631, 647 (2015) (citing *Halici v. City of Gaithersburg*, 180 Md. App. 238, 248 (2008)); *see also White v. Register of Wills of Anne Arundel Cnty.*, 217 Md. App. 187, 190 (2014) (citing *Motor Vehicle Admin. v. Shea*, 415 Md. 1, 15 (2010)). In general, we are limited to determining whether substantial record evidence supports the agency's

11

findings and conclusions "'and to determine if the administrative decision is premised upon an erroneous conclusion of law.'" *Montgomery v. E. Corr. Inst.*, 377 Md. 615, 625 (2003) (quoting *United Parcel v. People's Counsel*, 336 Md. 569, 577 (1994)). Maryland appellate courts "ordinarily give considerable weight to the administrative agency's interpretation and application of the statute that the agency administers." *Id.* (citations omitted); *see also Bd. of Liquor License Comm'rs for Baltimore City v. Kougl*, 451 Md. 507, 514 (2017); *White*, 217 Md. App. at 193 (citing *Bowen v. City of Annapolis*, 402 Md. 587, 612 (2007)) (specifically giving considerable weight to DBM's classification of an employee).

## A. Government Structure

We begin our analysis by examining the structure of the Executive Branch of State government and its relationship to county boards of education. Maryland Code (1984, 2014 Repl. Vol.), State Government Article ("SG"), § 8-201 lists nineteen principal departments of the executive branch. County boards of education generally, and the Montgomery County Board of Education specifically, are not listed amongst the departments. *Id.* Interestingly, MSDE is not listed as a principal department of the Executive Branch of State government in SG § 8-201. Maryland Code (1978, 2014 Repl. Vol.), Education Article ("EA"), § 2-101 does, however, establish MSDE "as a principal department of the State Government."

As Donlon argues *supra*, it is true that the State Board of Education exercises broad

12

authority and supervision over the administration of public schools in the State.[9]  As the

Court of Appeals has explained, the State Board

> has very broad statutory authority over the administration of the public school system in this State, that the totality of its statutory authority constitutes a visitatorial power of such comprehensive character as to invest the State Board with the last word on any matter concerning educational policy or the administration of the system of public education, that this power is one of general control and supervision, that it authorizes the State Board to superintend the activities of the local boards of education to keep them within the legitimate sphere of their operations, and that whenever a controversy or dispute arises involving the educational policy or proper administration of the public school system of the State, the State Board's visitatorial power authorizes it to correct all abuses of authority and to nullify all irregular proceedings.

*Baltimore City Bd. of Sch. Comm'rs v. City Neighbors Charter Sch.*, 400 Md. 324, 342-43

(internal quotation marks and footnotes omitted) (quoting *Bd. of Educ. of Prince George's

Cnty. v. Waeldner*, 298 Md. 354, 359-62 (1984)).  Thus, the State Board indisputably

exercises a great deal of control over public education in the State.

Whether Donlon is an employee of the executive branch, however, is a different

question than whether the State Board has control over county boards.  In *Chesapeake

Charter, Inc. v. Anne Arundel County Board of Education*, 358 Md. 129 (2000), the Court

of Appeals was called upon to determine whether county boards of education were

divisions or units of MSDE for purposes of the General Procurement Law, Division II of

the State Finance and Procurement Article, as it existed at that time.  The Court explained

that the Education Article of the Maryland Code creates a county board of education for

---

[9] The State Board of Education is the "head" of the MSDE.  *Chesapeake Charter, Inc. v. Anne Arundel Cnty. Bd. of Educ.*, 358 Md. 129, 137 (2000).  *See* ED § 2-102.

each county, "with limited authority to control educational matters that affect the county."

*Id.* at 135-36. The Court clarified that county boards of education are State agencies for some purposes and local agencies for other purposes:[10]

> Although in terms of their composition, jurisdiction, funding, and focus, they clearly have a local flavor, the county school boards have consistently been regarded as State, rather than county, agencies.
>
> County school boards are considered generally to be State agencies because (1) the public school system in Maryland is a comprehensive State-wide system, created by the General Assembly in conformance with the mandate in Article VIII, § 1 of the Maryland Constitution to establish throughout the State a thorough and efficient system of free public schools, (2) the county boards were created by the General Assembly as an integral part of that State system, (3) their mission is therefore to carry out a State, not a county, function, and (4) they are subject to extensive supervision by the State Board of Education in virtually every aspect of their operations that affects educational policy or the administration of the public schools in the county. **Although legally State agencies for those reasons, they are not normally regarded, for structural or budgetary purposes, as units within the Executive Branch of the State government.**

*Id.* at 136-37 (emphasis added) (internal citations omitted).

The Court clarified that the General Assembly created a balance "between State

---

[10] As the Court of Appeals has said, "an entity may qualify as a State agency for some purposes, while being classified as a local agency for other purposes." *Washington Suburban Sanitary Comm'n v. Phillips*, 413 Md. 606, 632 (2010) (citations omitted).

Donlon cites many cases, not all reported, stating that county boards of education are agents or instrumentalities of the State. These cases do not control. They are set in the context of sovereign immunity and conclude that county boards of education are State units **for sovereign immunity purposes**. *See, e.g., Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012); *Adams v. Calvert Cnty. Pub. Sch.*, 201 F. Supp. 2d 516, 520-21 (D. Md. 2002); *Jones v. Frederick Cnty. Bd. of Educ.*, 689 F. Supp. 535, 537-38 (D. Md. 1988); *Bd. of Educ. of Baltimore Cnty. v. Zimmer-Rubert*, 409 Md. 200, 205-09 (2009). Some were decided before *Chesapeake Charter*, *see, e.g., Montgomery Cnty. Educ. Ass'n v. Bd. of Educ. of Montgomery Cnty.*, 311 Md. 303 (1987); *Bd. of Educ. of Prince George's Cnty. v. Prince George's Cnty. Educators' Ass'n*, 309 Md. 85 (1987); *Bd. of Educ. of Montgomery Cnty. v. Montgomery Cnty.*, 237 Md. 191 (1964).

government structures and State-based but predominantly local structures." *Id.* at 137. The Court set out the structure of MSDE, which consists of (1) the State Board (the head of MSDE, "vested with ultimate supervisory authority for determining educational policy in Maryland and administering the public school system"), (2) the State Superintendent, and (3) "the other professional, administrative, and clerical . . . employees for budgetary and personnel purposes." *Id.* (citation omitted). The Court then summarized the powers of the State Board:

> The authority of the State Board of Education, codified in part in [EA] § 2–205, has been described as "a visitatorial power of the most comprehensive character," one that is "in its nature, summary and exclusive." *Wiley v. Allegany County School Comm'rs*, 51 Md. 401, 405-06 (1879); *Zantzinger v. Manning*, 123 Md. 169, 178, 90 A. 839, 842 (1914); *Wilson v. Board of Education*, 234 Md. 561, 565, 200 A.2d 67, 69 (1964). It includes (1) determining the primary and secondary educational policies of the State, (2) explaining the true intent and meaning, causing to be carried out, and deciding all controversies and disputes arising under the provisions of the Education Article that are within its jurisdiction, (3) adopting by-laws, having the force of law, for the administration of the public schools, (4) through the State Superintendent of Schools, exercising general control and supervision over the public schools and educational interests of the State, (5) preparing the annual State public school budget, including appropriations for State aid to the counties for current expenses, student transportation, and public school construction, and (6) specifying the information each county board is required to record and the form in which it is to be recorded.

*Id.* at 137-38 (footnote omitted).

Pertinent to the present situation, the Court then went on to explain the structures of county boards of education:

> [F]or each county, the Legislature has created a county department of education that, in structure, generally mirrors that of the State Department of Education. The county school board is the head of the county department and is responsible for administering, in the county, the supervening State policy determined by the State Board of Education, in accordance with State

15

Board's directives. *See* [EA] § 4–108. There is, as well, a county superintendent, who is the executive officer of the county board and, in essence, the chief executive officer of the county department. **Finally, there are the teachers,** principals, and other professional, administrative, clerical, security, transportation, and maintenance staff **hired by the county school board to work in or service the schools in the county. Unlike the situation at the State level, the county superintendent and the employees of the county department of education are appointed and their salaries are set by the county school board upon recommendation of the county superintendent, § 4–103(a), in accordance with a personnel system established by the county board.**

*Id.* at 138-39 (emphasis added; footnote omitted). After analyzing these State and local structures, the Court of Appeals observed that less than half of the funding of the county boards came from the State and that the county boards submit their own budget. *Id.* at 139.

The Court then concluded that county boards of education are not divisions or units within MSDE for purposes of the General Procurement Law:

What this statutory scheme reveals is that, although the county boards are generally regarded as State agencies because they are part of the State public education system, are subject to extensive supervision and control by the State Board of Education, and exercise a State function, from a budgetary and structural perspective, **they are local in character. They are *not* divisions of or units within the State Department of Education.** They are subject to the county, not the State, budget process and must justify their budget requests to the county government. Most of their operational funding comes from the county, not the State, government. **When these factors are taken into account, it is clear that the general characterization of county boards of education as State agencies does not require a finding that they are entities "in the Executive Branch of the State government" for purposes of SFP § 11–101(x).**

*Id.* at 139-40 (bold emphasis added).

After further analysis of the procurement laws of Maryland, the Court held that "a county school board is not a 'unit' within the meaning of [the General Procurement Law], and, accordingly that [the Maryland State Board of Contract Appeals] has no jurisdiction

16

over disputes arising from procurement decisions made by those boards." *Id.* at 145-46. Therefore, for purposes of procurement law, county school boards are not units of the Executive Branch of State government. *Id.*

In *BEKA Industries, Inc. v. Worcester County Board of Education*, 419 Md. 194 (2011), the Court of Appeals clarified the scope of *Chesapeake Charter*. One issue presented in that case was whether sovereign immunity was a defense available to a county board of education in a suit for breach of contract. *BEKA*, 419 Md. at 203. The Court stated that, for sovereign immunity purposes, a county board of education is a State agency, and thus, subject to governmental immunity. *Id.* at 210 (citations omitted). The Court explained that *Chesapeake Charter* did not hold that county boards of education are never to be considered units of the State Government. Instead, the Court cited favorably to the County Board's argument that *Chesapeake Charter* stands for the proposition that

> a local school board is not a "unit" of State Government for purposes of the General Procurement Law because the "procurement of supplies and services by the county boards of education" in contrast to school construction, has never been subject to the general authority of the Board of Public Works, or the Department of General Services.

*Id.* at 213 (footnote omitted). The Court continued, instructing that

> the fine distinction drawn in *Chesapeake Charter* for the purposes of determining whether a school bus contract (a local, operational expense) was governed by the State's General Procurement Law, as highlighted by the County Board . . . in this case, does not proscribe the application of [SG] § 12–201(a)'s waiver of sovereign immunity to the County Board in the present contract action.

*Id.* at 214 (footnote omitted). Later, in recapitulating that *Chesapeake Charter* held that a county board of education's contracts were not subject to the General Procurement Law

17

because the county board was not a unit of the executive branch for purposes of the General Procurement Law, the Court stated that its holding in that case "was a narrow one." *Id.* at 216-17.

Applying the principles and analyses of *Chesapeake Charter* and *BEKA* to the case before us, we conclude that public school teachers employed by county boards of education are not employees of the Executive Branch of State government.

## B. Statutory Construction

Broadly speaking, the WBL protects a State employee from reprisal after he or she makes a protected disclosure of information evidencing, *inter alia*, abuses of authority, gross mismanagement, gross wastes of money, dangers to public safety, or violations of law. SPP § 5-305; *Montgomery*, 377 Md. at 625. Specifically, the WBL prohibits "a supervisor, appointing authority, or the head of a principal unit" from "tak[ing] or refus[ing] to take any personnel action as a reprisal against an employee who:"

> (1) discloses information that the employee reasonably believes evidences:
> > (i) an abuse of authority, gross mismanagement, or gross waste of money;
> > (ii) a substantial and specific danger to public health or safety; or
> > (iii) a violation of law; or
> (2) following a disclosure under item (1) of this section seeks a remedy provided under this subtitle or any other law or policy governing the employee's unit.

SPP § 5-305. Section 5-309 of the State Personnel Article specifies that a putative whistleblower must file his or her complaint with DBM "within 6 months after the complainant first knew of or reasonably should have known of the violation." The appeal

and judicial review procedures are governed by SPP § 5-310.[11]  A court may award costs and reasonable attorney's fees to a prevailing WBL complainant under SPP § 5-311.

The first conformation of the WBL was enacted in 1980.  1980 Md. Laws, ch. 850 (H.B. 616).  From the beginning, the law applied only to employees of the State and applicants for State employment.[12]  The 1980 bill's prefatory statement explained that "[t]he purpose of this subtitle is to prohibit any **State** appointing authority from using a personnel action as a retaliatory measure against an employee or applicant for State employment who has made a disclosure of illegality or impropriety." *Id.* (emphasis added).

The statute's scope provision, SPP § 5-301, was enacted in 1996.  1996 Md. Laws, ch. 347 (H.B. 774).  It provides: "This subtitle applies to all employees and State employees who are applicants for positions in the Executive Branch of State government, including a unit with an independent personnel system."  Thus, for present purposes (because Donlon is not an applicant for a position in the executive branch), it applies only to employees in

---

[11] Additionally, if other law prohibits disclosure of the information, the State employee is still protected if the State employee discloses the information specifically to the Attorney General.  SPP § 5-306.  If, during an investigation of a complaint filed under SPP § 5-309, the DBM "finds that reasonable grounds exist to believe that a crime has been committed," the DBM shall, *inter alia*, "promptly refer the matter to an appropriate prosecutor[.]"  SPP § 5-312.

[12] Maryland has no comprehensive, generally applicable whistleblower statute.  *See generally* John A. Gray, *The Scope of Whistleblower Protection in the State of Maryland: A Comprehensive Statute Is Needed*, 33 U. Balt. L. Rev. 225 (2004) (surveying statutory and common law whistleblower protections in Maryland and calling for the General Assembly to enact a comprehensive whistleblower statute).

the executive branch.[13]  *Id.*  *See also White*, 217 Md. App. at 190 n.1.

As stated previously, Donlon asserts broadly in his brief that "[a] plain reading of the WBL shows that Donlon is protected."  After stating this and quoting SPP § 5-301, however, Donlon's plain language analysis stops, and his brief moves onto the next topic. He does not explain how a plain reading of the statute supports his position.  In fact, the statutory text of the WBL cuts against Donlon's position.

Having established that SPP § 5-301 states clearly that the WBL applies only to State employees in the executive branch (and applicants), we continue our statutory analysis by examining SPP § 5-307, an election of procedures section.  SPP § 5-307 sets out three groups of employees who may elect the WBL's procedures or other grievance procedures set forth in the Maryland Code: employees in the State Personnel Management System, employees of the University System of Maryland, and employees of Morgan State University.  Notably, the latter two groups are also in the education profession, and SPP § 5-307 specifically mentions them,[14] whereas it says nothing about public school teachers

---

[13] SPP § 5-301's slightly awkward phrasing, ("[t]his subtitle applies to *all employees and State employees* who are applicants for positions in the Executive Branch of State Government" (emphasis added)), appears to be the result of an amendment while the bill was being drafted.  As originally written, that phrase read "this subtitle applies to all employees in the Executive Branch of State government[.]"  During the drafting process, the bill was amended, and the "and State employees who are applicants for positions" language was inserted in the middle of the clause.  1996 Md. Laws, ch. 347 (H.B. 774).

[14] SPP § 5-307(b) provides that an employee of the University System of Maryland may elect to file either a complaint under SPP § 5-309 or a grievance under Title 13 of the Education Article, whereas SPP § 5-307(c) provides that an employee of Morgan State University may elect to file either a complaint under SPP § 5-309 or a grievance under Title 14 of the Education Article.

or even other State colleges. Thus, we conclude that there is nothing in the plain language of the statute that supports Donlon's contention that the WBL applies to public school teachers employed by a county board of education.

As stated previously, we accord a great deal of weight to an agency's interpretation of the statute it administers. *Kougl*, 451 Md. at 514 (citations omitted). In a recent case, *White*, this Court considered whether the WBL applied to the former Chief Deputy Register of Wills for Anne Arundel County as an executive branch employee or a judicial branch employee. 217 Md. App. at 189. In that case, similar to the case at hand, the DBM dismissed White's whistleblower complaint for lack of jurisdiction, stating that she was a judicial branch employee of the State government, not an executive branch employee. *Id.* at 190. The OAH and the circuit court affirmed. *Id.*

In our review, we explained that the Office of the Register of Wills was "indisputably part of the judicial branch[,]" observing that the office was created by Article IV, section 41, of the Maryland Constitution and that it functions as the clerk of the Orphans' Court. *Id.* at 191. Therefore, we stated that the only question was whether the Chief Deputy of that office is also considered part of the Judicial Branch of the State government. *Id.*

In response to White's argument that the statutory structure raised separation of powers concerns (in light of the fact that the Comptroller, an officer of the executive branch, exercised some budgetary and fiscal control over the employees of the Register of Wills), we held that the Chief Deputy was an employee of the Judicial Branch of the State government. *Id.* at 195-96. Importantly, we said the following about DBM's determination

21

that White was an employee of the judicial branch, not the executive branch:

> Not only do basic canons of statutory interpretation favor the conclusion that Ms. White is a judicial employee, but administrative deference favors it as well. We recognize that "an administrative agency's interpretation and application of the statute" that the agency administers should be given "considerable weight" by reviewing courts. *Bowen v. City of Annapolis*, 402 Md. 587, 612, 937 A.2d 242 (2007). **Here, DBM, the agency responsible for overseeing the Whistleblower Act, did not think the Act applied to Ms. White. Thus, we should accord DBM's view substantial weight.** Moreover, DBM has acted consistently with this view because it never classified Ms. White as an employee of the executive branch.

*Id.* at 193. *See also Kougl*, 451 Md. at 514 ("Appellate courts should ordinarily give 'considerable weight' to 'an administrative agency's interpretation and application of the statute which the agency administers.'" (quoting *Maryland Aviation Admin. v. Noland*, 386 Md. 556, 572 (2005))).

In the case before us, DBM also made a determination that Donlon was not subject to the WBL. The letter by the OSEEOC, as the designee of the Secretary of DBM, stated that Donlon was not a State employee because MCPS is not in the executive branch. Thus, in light of the "substantial weight" we accord DBM's view, *see White*, 217 Md. App. at 193, and the fact that nothing in the statutory text of SPP § 5-301 supports Donlon's argument, we conclude that, as a matter of statutory construction, the WBL does not apply to public school teachers employed by county boards of education because they are not employees of the executive branch.[15]

---

[15] MCPS also filed a motion just before oral argument in this case, requesting that we take judicial notice of House Bill 1145 from the 2017 legislative session, titled the "Public School Employee Whistleblower Protection Act." The bill passed both chambers of the General Assembly, and Governor Hogan signed it on May 25, 2017, after oral argument in this case. H.B. 1145, which has an effective date of October 1, 2017,

## C. Employment Test

We have determined that public high school teachers employed by county boards of

education are not employees of the Executive Branch of State government for purposes of

---

establishes whistleblower protections for public school employees under a separate statute by adding a new subtitle to the Education Article. 2017 Md. Laws, ch. 730 (H.B. 1145). The preamble states the purpose of the statute as "prohibiting a public school employer from taking or refusing to take certain personnel actions against public school employees who disclose certain behavior or refuse to participate in certain behavior[.]" *Id.*

Interestingly, H.B. 1145 defines a "public school employee" as "any individual who is employed by a public school employer or an individual of equivalent status in Baltimore City[,]" and it specifically states that this term "does not include a State employee." *Id.* In turn, "public school employer" is defined as a "County Board of Education or the Baltimore City Board of School Commissioners." *Id.* Thus, H.B. 1145 distinguishes between a State employee and a public school teacher employed by a County Board of Education. *Id.* In substance, H.B. 1145 protects a public school employee from retaliation if the public school employee makes a protected disclosure. *Id.*

Donlon has filed an opposition to MCPS's motion, arguing that (1) we may not take judicial notice of H.B. 1145 because it is not an adjudicative fact; (2) it is irrelevant to the case because it will not become law until October 1, 2017; (3) MCPS's motion serves only as a distraction. Donlon Opposition at 2-3. In response to the opposition, MCPS contends that H.B. 1145 certainly is relevant because "[i]t is clear that if Donlon were covered by the WBL, there would be no need for [H.B. 1145]." MCPS further argues that the relevance of H.B. 1145 does not turn on its effective date and that H.B. 1145 "falls within the sphere of legislative facts of which this Court may take judicial notice."

We may certainly take cognizance of H.B. 1145's existence and substance, as well as the new law, effective October 1, 2017. Cases are legion in which this Court has examined legislative history, including bills that ultimately failed to become law. *See, e.g., State v. Braverman*, 228 Md. App. 239, 259 n.12, *cert. denied sub nom. Goldberg v. State*, 450 Md. 115 (2016); *Bethlehem Steel Corp. v. Supervisor of Assessments of Baltimore Cnty.*, 38 Md. App. 543, 549, n.10 (1978). It is beyond peradventure that it is a court's responsibility to remain educated and updated about the law. This task sometimes includes monitoring the activities at the General Assembly.

What weight we accord H.B. 1145 to the meaning of the WBL is an entirely different matter, however. A subsequent enactment generally does not govern the meaning of prior law. The Court of Appeals has explained that a later amendment "is not controlling as to the meaning of the prior law." *Dir. of Fin. for Baltimore Cnty. v. Myers*, 232 Md. 213, 218 (1963) (citing *A. G. Crunkleton Elec. Co. v. Barkdoll*, 227 Md. 364, 369 (1962)). Although we ultimately grant MCPS's motion, we do not require a motion or any independent invitation from a party to consider the law and legislative history.

the WBL. As the ALJ did, we shall now analyze whether there is nonetheless a common law employment relationship between Donlon and the State Board, pursuant to the factors set out by the Court of Appeals in *Whitehead*, *supra*, 304 Md. at 77-78. The Court explained that these five factors are "(1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer[.]" *Id.* (citing *Mackall v. Zayre Corp.*, 293 Md. 221, 230 (1982)). Of these, "the factor of control stands out as the most important." *Id.* at 78. The Court stated "that whether the employer 'has the right to control and direct the employee in the performance of the work and in the manner in which the work is to be done' is the 'decisive'" test. *Id.* (citing *Mackall*, 293 Md. at 230).

Applying the first factor to the case *sub judice*, the County Board, not the State Board, has the statutory power (pursuant to EA § 4-103)[16] to select and hire teachers, including Donlon. Further, Donlon's contract is with the County Board, not with the State Board. MCPS's director of recruitment, Martinez, testified to this effect. As to the second factor, the County Board sets Donlon's salary, as per EA § 4-103. Further, as evidenced by both Donlon's testimony and his W-2, his salary is paid by MCPS, not by MSDE or the

---

[16] EA § 4-103 provides:

(a) On the written recommendation of the county superintendent and subject to the provisions of this article, each county board shall:
(1) Appoint all principals, teachers, and other certificated and noncertificated personnel; and
(2) Set their salaries.

State Board.

Moving on to the third factor—the power to discharge—the County Board, not the State Board, has the immediate power to terminate a teacher, as provided in EA § 6-202.[17] Martinez testified to this, also explaining that the County Board does not need permission from the State Board to fire a teacher. Donlon's work as a teacher is part of the regular business of MCPS, although "education," in general, is also a part of the regular business of MSDE. Thus, it is arguable that the fifth factor cuts both ways.

As to control—the most important factor in the test—Martinez testified that the County Board and the Superintendent of MCPS—not the State Board—are responsible for overseeing the daily operations of public schools in Montgomery County. While the State

---

[17] EA § 6-202(a) provides:

> (1) On the recommendation of the county superintendent, a county board may suspend or dismiss a teacher, principal, supervisor, assistant superintendent, or other professional assistant for:
> (i) Immorality;
> (ii) Misconduct in office, including knowingly failing to report suspected child abuse in violation of § 5-704 of the Family Law Article;
> (iii) Insubordination;
> (iv) Incompetency; or
> (v) Willful neglect of duty.

Nonetheless, we do recognize, as Donlon points out, that a teacher may appeal the decision of the county board to the State Board, as provided in EA § 6-202(a)(4). Donlon's argument proves too much, however, because the decision of the State Board is then reviewable by a circuit court, pursuant to the Administrative Procedure Act. Maryland Code (1957, 2014 Repl. Vol.), State Government ("SG") § 10-101 *et. seq. See, e.g.*, *Bd. of Sch. Comm'rs of Baltimore City v. James*, 96 Md. App. 401, 418 (1993), and no one would assert that a teacher was ultimately an employee of a court because a court has the authority to pass upon the teacher's discharge.

25

Board does maintain broad power over education in the State, *see, e.g., City Neighbors Charter Sch.*, *supra*, 400 Md. at 342-43, there is no evidence that the State Board wields this same control over Donlon as an employee.

Given that only one factor (the fifth) cuts both ways, while the rest—including the most important (control)—support a finding of no employment relationship between Donlon and MSDE, we conclude that the ALJ did not err in his determination that no such relationship existed between Donlon and MSDE.

Nonetheless, the Court of Appeals also instructed in *Whitehead* that "[a] worker may simultaneously be the employee of two employers." 304 Md. at 79 (citing *Mackall*, 293 Md. at 229). As stated *supra*, Donlon argues that he is one such "lent employee" and maintains "dual employment" between MCPS and the State Board. The Court of Appeals has set forth a three-part test in the workers' compensation context for analyzing whether an employee has two employers, under the "lent employee" or "dual employment" doctrine:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
> (a) the employee has made a contract of hire, express or implied, with the special employer;
> (b) the work being done is essentially that of the special employer; and
> (c) the special employer has the right to control the details of the work.

*Id.* at 83 (quoting *William J. Burns Int'l v. Ferris*, 16 Md. App. 568, 578-79 (1973)) (other citations omitted).

Donlon meets only the second of these elements because his work (education) is also the work of the State Board. Nonetheless, he cannot establish that he meets the first

and third elements.  He has no express contract of employment with the State Board, MSDE, or the State of Maryland, and he presented no evidence of an implied contract.  His only express contract is with the County Board.  Further, as we just explained, the State Board does not have the authority his work duties on any regular basis.[18]  In light of this, we conclude that Donlon is not a dual employee of MCPS and MSDE.

## II.

### Judicial Estoppel

On judicial review of the administrative decision, the circuit court suggested that MCPS should be judicially estopped from arguing that it is not a State agency for purposes of the WBL because county boards assert State sovereign immunity pursuant to the Eleventh Amendment.[19]  Likewise, Donlon complains that it is inequitable for MCPS to choose to be a State agency in contexts when it is convenient for MCPS and disclaim its

---

[18] We observe, however, that a 2009 opinion letter of the Attorney General stated that:

> In our opinion, MSDE may enter into "loaned educator" contracts with local school systems to obtain the services of employees of those school systems on a temporary basis.  If a loaned educator is to work for MSDE for more than a brief period of time, the individual should become a State employee in the State Personnel Management System.

94 Md. Op. Atty. Gen. 97, 109-10 (2009).  This hypothetical temporary "loaned educator" example is the exception that proves the rule here.  Donlon's employment relationship is not one of a permanent lent employee.

[19] The court, in its May 5 order, did not explicitly conclude that MCPS was judicially estopped from arguing that it was not a State agency but, in its oral opinion, it reversed the administrative decision "[f]or the reasons [it] articulated[,]" one of which was judicial estoppel.

status as a state agency when MCPS finds it inconvenient.

In response to the circuit court's trepidation, MCPS argues that it should not be judicially estopped from asserting that it is a State agency for some purposes (*e.g.*, sovereign immunity), while stating that it is not a State agency for other purposes (*e.g.*, the WBL). MCPS maintains that Maryland decisional law has held that governmental entities may be classified as State or local at different times, depending on the circumstances.

As stated previously, the Court of Appeals in *Washington Suburban Sanitary Commission* stated that "an entity may qualify as a State agency for some purposes, while being classified as a local agency for other purposes." 413 Md. 606, 632 (2010) (citations omitted). Thus, MCPS is correct that it is not a contradiction for an agency to be both a State agency and a local agency at varying times.

In Maryland, appellate courts define judicial estoppel "as a principle that precludes a party from taking a position in a subsequent action inconsistent with a position taken by him or her in a previous action." *Underwood-Gary v. Mathews*, 366 Md. 660, 667 n.6 (2001) (citing *WinMark Ltd. P'Ship v. Miles & Stockbridge*, 345 Md. 614 (1997)). To apply judicial estoppel, there are three elements that must be present:

> (1) one of the parties takes a factual position that is inconsistent with a position it took in previous litigation;
> (2) the previous inconsistent position was accepted by a court; and
> (3) the party who is maintaining the inconsistent position must have intentionally misled the court in order to gain an unfair advantage.

*Mona v. Mona Elec. Grp., Inc.*, 176 Md. App. 672, 726 (2007) (emphasis omitted) (quoting *Dashiell v. Meeks*, 396 Md. 149, 171 (2006)) (other citations omitted). As noted above, the position sought to be estopped must be one of fact, *rather than a legal argument*.

28

*Thomas v. Bozick*, 217 Md. App. 332, 341 n.5 (2014) (citing *Vogel v. Touhey*, 151 Md. App. 682, 711 (2003)). "Judicial estoppel is applicable . . . 'when it becomes necessary to protect the integrity of the judicial system from one party who is attempting to gain an unfair advantage over another party by manipulating the court system.'" *Kamp v. Dep't of Human Servs.*, 410 Md. 645, 673 (2009) (quoting *Dashiell v. Meeks*, 396 Md. at 171).[20]

Here, Donlon, once again, fails to demonstrate the first and third elements. The applicability of the WBL to MCPS, and MCPS's assertion of sovereign immunity and are both quintessential issues of law, not of fact. It doesn't matter whether a party takes an inconsistent position compared to one taken in previous litigation. Legal arguments are not judicially estopped. *See Thomas*, 217 Md. App. at 341 n.5 (determining that judicial estoppel was inappropriate where appellant asserted inconsistent positions as to his legal status as interpreted in light of an Operating Agreement adopted by the parties). Although, as we have already established, an agency may have simultaneously both State and local characteristics. *See Washington Suburban Sanitary Comm'n*, 413 Md. at 632 (holding that "an entity may qualify as a State agency for some purposes, while being classified as a local agency for other purposes.") (citations omitted).

Nothing in the record suggests that MCPS (or any other county board of education),

---

[20] Donlon cites a Supreme Court case, *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001), which instead states the third factor of judicial estoppel as "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." We recognize that this formulation omits the "misleading the court" aspect of the third element. Given that judicial estoppel in the present case is a matter of state law, not federal law, we apply the Maryland formulation of judicial estoppel.

was attempting to *mislead* a court by asserting sovereign immunity. The county boards were simply asserting legal arguments available to them. It is worth noting that none of the cases cited by either party apply judicial estoppel with regard to the State/local nature of county boards of education, even in situations in which an appellate court has recognized the inconsistency of the position. *See, e.g.*, *BEKA Industries*, 419 Md. at 210 n.10 ("At various times, county boards of education have asserted the predominance of either their 'local' or 'State' nature depending on their desired outcome.").

We conclude that MCPS is not judicially estopped from arguing that it is not a State agency for purposes of the WBL.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED WITH INSTRUCTIONS TO REINSTATE THE DECISION OF THE OFFICE OF ADMINISTRATIVE HEARINGS.**
**COSTS TO BE PAID BY APPELLEE.**