*PG Co. Child Support v. Lovick*, No. 198, September Term 2017. Opinion by Nazarian, J.

**FAMILY LAW – AFFIDAVIT OF PARENTAGE/ACKNOWLEDGMENT OF PATERNITY – CHOICE OF LAW/FULL FAITH AND CREDIT**

An affidavit of parentage/acknowledgment of paternity from another jurisdiction has the same force and effect as an affidavit of parentage/acknowledgment of paternity signed and executed in Maryland. The foreign affidavit is subject to the same terms of modification and rescission as a Maryland affidavit under paternity proceedings in Subtitle 10 of the Family Law article.

Circuit Court for Prince George's County
Case No. CAS13-34966

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 198

September Term, 2017

_____

PRINCE GEORGE'S COUNTY OFFICE OF
CHILD SUPPORT ENFORCEMENT EX REL

v.

MICHAEL LOVICK

_____

Eyler, Deborah S.,
Graeff,
Nazarian,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: August 30, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

The Prince George's County Office of Child Support Enforcement (the "Office") appeals an order of the Circuit Court for Prince George's County setting aside affidavits of parentage that Michael Lovick had executed in the District of Columbia, where his long-time girlfriend had given birth to twins, and striking an earlier order requiring him to pay child support. The Office claims that the circuit court failed to extend full faith and credit to the D.C. affidavits and that the passage of more than two years precluded Mr. Lovick from seeking to set them aside. Mr. Lovick responds that his child support obligations are controlled by Maryland law, which allows a court to set aside a declaration of paternity after a court-ordered genetic test excludes him as the twins' father, as a test did here. We agree with Mr. Lovick and affirm.

## I. BACKGROUND

On October 4, 2011, Mr. Lovick's girlfriend, Angela Rice, gave birth to twin girls ("the twins") at Georgetown University Hospital in the District of Columbia. Mr. Lovick and Ms. Rice lived in Prince George's County at the time the twins were born, and both live there still. Two days after the twins' birth, Mr. Lovick signed, at the hospital, an Acknowledgment of Paternity (the "Acknowledgment" or the "affidavit") stating that he was the twins' father. As part of the Acknowledgment, Ms. Rice affirmed that Mr. Lovick was the only possible biological father of her children.

The couple separated, and in February 2013, Ms. Rice filed a complaint in the circuit court seeking custody of the twins. She and Mr. Lovick later agreed to share legal custody and that Ms. Rice would have primary physical custody. After they entered this agreement, Mr. Lovick contacted the Office to initiate a child support case. A child support action was

initiated,[1] and in February 2014, Mr. Lovick agreed to pay $1,500 per month in child support.

In May 2016, Mr. Lovick filed a motion to establish paternity in both cases and requested a court-ordered genetic test. This motion followed Mr. Lovick's discovery that Ms. Rice had been involved sexually with another man around the time the twins were conceived and the results of private genetic testing that revealed Mr. Lovick was not the twins' father. The circuit court denied the motion.

On September 16, 2016, Mr. Lovick filed a new motion in the child support case to set aside the Acknowledgment on the basis of fraud. After a hearing in December, the circuit court ordered genetic testing and scheduled a follow-up hearing. The test results excluded any possibility that Mr. Lovick was the twins' father. And at the hearing, the circuit court agreed with Mr. Lovick that Ms. Rice had committed fraud:

> Ms. Rice said he is the only possible father. And it's quite apparent that that was a lie. That was an out and out lie…. It's obvious that it's not Mr. Lovick. It's obvious that she lied on the affidavit… I can't, in good conscience, let Ms. Rice falsify that affidavit and charge this man with child support.

On March 28, 2017, the circuit court entered an order setting aside the Acknowledgment of Paternity and striking the February 2014 child support order. The Office filed a timely appeal.

## II. DISCUSSION

The Office challenges, on three grounds, the circuit court's decisions to set aside the

---

[1] Case No. CAS13-34966.

Acknowledgment of Parentage and strike the child support order.[2] *First*, the Office

contends that the court should have applied the law of the District of Columbia, which

prohibits challenges to Affidavits of Parentage more than two years after execution, and

dismissed Mr. Lovick's motion to set aside his Affidavit. By applying Maryland law, the

Office argues, the circuit court failed to extend full faith and credit to the Affidavit. *Second*,

the Office asserts that Mr. Lovick could not prove fraud, duress, or a material mistake of

fact in connection with the Affidavit. *And third*, the Office argues that Mr. Lovick is

estopped from disclaiming the twins' paternity because, in the custody case, he had sought

to increase his visitation with them after he learned that he was not their father.

"When the trial court's decision involves an interpretation and application of

Maryland statutory and case law, our Court must determine whether the lower court's

conclusions are legally correct." *Clickner v. Magothy River*, 424 Md. 253, 266

(2012) (cleaned up). We will not set aside a circuit court's fact findings unless they are

clearly erroneous, *Clickner*, 424 Md. at 266, but we review questions of law *de*

---

[2] In its brief, the Office phrased its Questions Presented as follows:

> 1. Did the circuit court err when it failed to extend full faith and credit to the District of Columbia's legal findings of paternity resulting from Mr. Lovick's execution of District of Columbia affidavits of parentage and set the affidavits aside in violation of District of Columbia law?
>
> 2. Did the circuit court err as a matter of law when it set aside Mr. Lovick's affidavits of parentage for the twins despite his failure to establish fraud, duress, or material mistake of fact?
>
> 3. Was Mr. Lovick judicially estopped from challenging his paternity of the twins given his efforts to obtain increased visitation with them in the Custody Case?

*novo. Harvey v. Marshall*, 389 Md. 243, 257 (2005). Here, neither party disputes that Mr. Lovick is not the twins' biological father—the questions before us concern the circuit court's authority to set aside the Affidavit of Parentage he executed right after they were born.

**Mr. Lovick Was Entitled To Seek To Have The Affidavit Set Aside.**

There is no doubt that Mr. Lovick signed the Affidavit, or that it states plainly that the "signed and notarized [affidavit] constitutes a legal determination of paternity" and "creates legal rights and obligations relating to the child, and may impact custody, child support and visitation." The Office argues that because the twins were born in the District of Columbia and Mr. Lovick executed the Affidavit in the District, his ability to rescind the Affidavit or have it set aside is controlled by District of Columbia law.

Under D.C. law, Mr. Lovick had sixty days to rescind his signature. D.C. CODE ANN. § 16-909.01(a-1). After sixty days have passed, an affidavit "legally establish[es] the parent-child relationship between the father and the child for all rights, privileges, duties, and obligations under the laws of the District of Columbia," D.C. CODE ANN. § 16-909.01(b), and may be challenged only if the signatory can prove fraud, duress, or material mistake of fact. *D.C. v. D.H.*, 140 Daily Wash. L. Rptr. 2117 (D.C. Super. Ct. 2012). After two years, the presumption of paternity becomes conclusive and can be challenged only on even narrower grounds not relevant here. D.C. CODE ANN. § 16-2342(c). Moreover, District of Columbia courts have held that a putative father cannot seek a court-ordered genetic test in order to determine whether he is the child's biological father after two years have passed, regardless of whether genetic tests excluded the man as a possible father.

4

*Virginia DeHart v. Lewis Ruffin*, 143 Daily Wash. L. Rptr. 2329 (D.C. Super. Ct. 2015). So if D.C. law controls Mr. Lovick's ability to have the Affidavit set aside, his 2016 filings are too late.

The Office points to the Full Faith and Credit Clause, Article IV of the United States Constitution, which provides that

> Full faith and credit shall be given in each State to the public Acts, Records and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof.

U.S. CONST. ART. IV; *see also* 28 U.S.C. § 1738 (2003) ("[J]udicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."). As the Supreme Court explained in *Magnolia Petroleum Co. v. Hunt*, the Clause ensures that a judgment from one state receives the same treatment in all states:

> [T]he clear purpose of the full faith and credit clause [is] to establish throughout the federal system the salutary principle of the common law that a *litigation* once pursued to judgment shall be as conclusive of the rights of the parties in every other court as in that where the judgment was rendered.

320 U.S. 430, 439–40 (1943) (emphasis added). As such, judicial findings of fact by *another state's court*, as well as conclusions of law, get full faith and credit in Maryland (absent circumstances not relevant in this case). *Dackman v. Dackman*, 252 Md. 331, 336 (1969), *rev'd on other grounds*, *Eastgate Assoc. v. Apper*, 276 Md. 698 (1976); *see also Underwriters Nat'l. Assurance Co. v. North Carolina Life and Accident and Health Ins. Guaranty Assoc.*, 455 U.S. 691, 704 (1982) ("[T]he judgment of a state court should have

5

the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced.") (cleaned up). To be sure, a foreign judgment may also be challenged when it conflicts with the public policy of Maryland. *See Malik v. Malik*, 99 Md. App. 521, 534 (1994) ("[W]here [a foreign] judgment is . . . against public policy . . . it will not be given any effect by our courts.").

There is also a federal statutory overlay. In order to receive federal funding, each state must "develop and use an affidavit for the voluntary acknowledgment of paternity[.]" 42 U.S.C. § 666(a)(5)(C)(iv), and have laws that "give full faith and credit to such an affidavit [*i.e.*, a voluntary acknowledgment of paternity] signed in any other State according to its procedures." *Id.* A signed voluntary affidavit of paternity thus is "considered a legal finding of paternity[.]" 42 U.S.C. § 666(a)(5)(D)(ii).

Maryland implemented these requirements in FL § 5-1048:

> A finding of paternity established in any other state *shall have the same force and effect in a proceeding under this subtitle* as in any other civil proceeding in this State if:
>
> (1) with respect to an adjudication of paternity, the finding was established by a court or by an administrative process that includes a right to appeal to a court; or
>
> (2) with respect to a finding of paternity that is based on an affidavit of parentage, the affidavit was signed after each signatory to the affidavit was advised of their legal rights.

MD. CODE ANN., FAMILY LAW ART. ("FL") § 5-1048 (emphasis added).

But no District of Columbia judgment established Mr. Lovick's parentage or obligation to pay child support. D.C. supplied the Affidavit, which has a certain legal significance under the Maryland child support enforcement statutes that the Office seeks

6

to enforce here. Consistent with federal law, "[a]n executed affidavit of parentage constitutes a legal finding of paternity, subject to the right of any signatory to rescind the affidavit." FL § 5-1028(d). After sixty days, "an executed affidavit of parentage may be challenged in court only on the basis of fraud, duress, and a mistake of material fact." *Id.*, (d)(2)(i). Unlike D.C. law, though, Maryland law does not preclude challenges after two years: to the contrary, a declaration of paternity may be modified or set aside "if a blood or genetic test done in accordance with § 5-1029 of this subtitle establishes the exclusion of the individual named as the father in the order." FL § 5-1038(a)(2)(i)(2).

And for that reason, the Full Faith and Credit Clause is not implicated here. Maryland law does, as federal law requires, give legal effect to the Affidavit—it establishes paternity, as a Maryland affidavit would, and sixty days after execution, it shifts the burden of proving fraud or duress or mistake of fact onto Mr. Lovick. But neither a Maryland nor D.C. affidavit would, by itself, create a child support judgment, and the mere fact that the affidavit came from elsewhere doesn't vitiate Mr. Lovick's statutory opportunity to modify the paternity finding now.

He followed the law and met his burden. After learning that the twins may not be his biological children, he asked the court, under FL § 5-1029, to order a genetic test. The court ordered the test, *see Faison v. MCOCSE ex rel. Murray*, 235 Md. App. 76, 83 (2017), and the results conclusively eliminated him as the twins' father. At that point, and because there was no suggestion that he acknowledged paternity knowing that he was not the father, the court could set aside the Affidavit and strike the child support order grounded in it. *See* FL § 5-1038(a)(2).

This latter point distinguishes this case from *Burden v. Burden*, 179 Md. App. 348 (2008). In that case, the father met and married the mother in South Dakota years after she gave birth to a son. *Id.* at 351. Although the father knew that he was not the boy's biological father, he nevertheless signed and filed in South Dakota a paternity affidavit acknowledging himself as "the natural father." *Id.* Three years later, the couple separated, and the mother initiated child support and divorce proceedings in Maryland. The circuit court found that the South Dakota paternity affidavit was not a court judgment entitled to full faith and credit and excluded the boy from the child support order because the father was not his biological father. *Id.* at 352. The Court of Appeals reversed, holding that the father's paternity had been determined conclusively. *Id.* at 369. The Court opted not to determine whether South Dakota or Maryland law applied, but applied both and reached the same result: the father would not be allowed to challenge paternity under South Dakota law because three years had passed, and he had no right to do so under Maryland law because he knew he was not the father at the time he signed the affidavit. *Id.* at 368–69.

*Burden* recognizes that an affidavit of parentage from a foreign jurisdiction has the same weight and effect as a Maryland affidavit in paternity proceedings under Subtitle 10 of the Family Law article, such as a child support case, but is subject to Maryland law for terms of modification and rescission. *Burden*, 179 Md. App. at 368 ("Under a literal reading, FL § 5-1048 does not apply here. The divorce action there was not a paternity proceeding under Subtitle 10, 'Paternity proceedings.' If FL § 5-1048 does apply, then the force and effect of the finding of paternity based upon voluntary acknowledgment is set forth in FL § 5-1028(d)[.]"); *see also* FL § 5-1048 ("A finding of paternity established in

any other state *shall have the same force and effect in a proceeding under this subtitle*[.]")
(emphasis added). But this case *did* arise under Subtitle 10—it's a child support enforcement action that involves Maryland resident parents and the same circuit court that entered the child support order in the first place. Under Maryland law, Mr. Lovick had a statutory right at least to attempt to prove fraud, duress, or material mistake of fact that Mr. Burden would not have had, assuming Maryland law had applied in that case. The court-ordered genetic test proved that Mr. Lovick is not the twins' father, and the record supports the circuit court's finding that the Affidavit and resulting finding of parentage should be set aside on the basis of fraud, and the 2014 child support order stricken.

*Finally*, we disagree that Mr. Lovick's efforts to maintain joint custody and enforce visitation, and even his motion for contempt against Ms. Rice, estopped him from seeking to terminate his child support obligation. Until the circuit court found that he was entitled to set aside the Affidavit, he was legally the twins' father, and he had had a relationship with them since birth. That relationship obviously is changing, and may even be coming to an end. The circuit court will need to decide in the first instance whether, in light of our decision today, it should modify or terminate Mr. Lovick's custody or visitation going forward, and we express no views on the merits of those different and important questions. But with the custody/visitation and child support proceedings in parallel, in separate actions on separate schedules, we see no basis on which we could find on this record that any inconsistencies between his positions at different points in time misled the court or placed the Office or Ms. Rice at an unfair disadvantage. *Montgomery Cty. Pub. Sch. v. Donlon*,

9

233 Md. App. 646, 674–75 (2017). The circuit court was not misled, and nor are we.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**