*Brian Donlon v. Montgomery County Public Schools*, No. 68, September Term 2017, Opinion by Harrell, J.

**STATE WHISTLE BLOWER PROTECTION ACT – COUNTY SCHOOL BOARDS AND TEACHERS – NOT STATE EMPLOYEES NOR UNITS OF THE EXECUTIVE BRANCH FOR PURPOSES OF THE WHISTLEBLOWER PROTECTION ACT**

The Court of Appeals held that a county board of education is not an entity of the State or a unit of the Executive Branch of State government for purposes of the Maryland State Whistleblower Protection Law, Md. Code (1993, 2015 Repl. Vol., 2016 Supp.), §§ 5–301–314 (the "WBL") of the State Personnel and Pensions Article. Consequently, its teachers are not protected by the WBL. County school boards have both State and local characteristics, and the appropriate designation of a county board (be it State versus local) depends on the context of the board's particular authority or function under the judicial microscope. Moreover, the plain language and legislative intent of the WBL extends no protection to county public school employees or teachers. This conclusion is supported by the recent enactment of the Public School Employee Whistleblower Protection Act (the "PSEWPA"), Md. Code (2017, 2018 Repl. Vol.), §§ 6-901–906 of the Education Article ("Educ.") (effective 1 October 2017), which extends expressly whistleblower protection to "any individual who is employed by a public school employer or an individual of equivalent status in Baltimore City." The PSEWPA excludes, however, state employees from its umbrella of protection. The Maryland Legislature was of the view that the PSEWPA was needed because the WBL did not extend whistleblower protection to public school teachers.

**JUDICIAL ESTOPPEL – ELEMENTS – APPLICABILITY**

The Court of Appeals explained again that the three-part test for judicial estoppel outlined by the intermediate appellate court in *Mont. Cnty Pub. Sch. v. Donlon*, 233 Md. App. 646, 651–52, 168 A.3d 1012, 1015 (2017), is appropriate given the Court's recent use of the same three-part test in *Bank of New York Mellon v. Georg*, 456 Md. 616, 175 A.3d 720 (2017), and, in *Blentlinger, LLC v. Cleanwater Linganore, Inc*., 456 Md. 272, 173 A.3d 549 (2017). The Court held unnecessary addressing further judicial estoppel when the first prerequisite that must exist for its application was not satisfied in the case. The contention that an entity is immune from suit on the grounds of sovereign immunity resulting from its State stature is not inconsistent with the assertion that county boards are neither units of the Executive Branch of our State government, nor entities of the State, for purposes of the WBL.

IN THE COURT OF APPEALS
OF MARYLAND

No. 68

SEPTEMBER TERM, 2017

_____

BRIAN DONLON

v.

MONTGOMERY COUNTY PUBLIC
SCHOOLS

_____

Barbera, C.J.,
Greene
Adkins
Watts
Hotten
Getty
Harrell, Glenn T., Jr.,
    (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Harrell, J.

_____

Filed: July 12, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

This is how it is today: The teachers are afraid of the principals. The principals are afraid of the superintendents. The superintendents are afraid of the board of education. The board is afraid of the parents. The parents are afraid of the children. The children are afraid of nothing!

—Milton Berle (1908-2002)
(TV and Motion Picture Icon)

Although Uncle Miltie's thesis is debatable, the quotation recognizes a chain-of-command structure popular in American public education systems. The present case has something to do with a part of that structure in Maryland.

We confront here the question of whether a teacher in the Montgomery County Public School ("MCPS") system (or any such system likely) is protected by the Maryland State Whistleblower Protection Law, Md. Code (1993, 2015 Repl. Vol., 2016 Supp.), §§ 5–301–314 (the "WBL") of the State Personnel and Pensions Article ("SPP"). Petitioner, Brian Donlon, contends that teachers employed by the county school board are embraced within the WBL because the county school board is a unit of the Executive Branch of State government.[1] Further, Donlon argues that Respondent, MCPS, should be estopped from

---

[1] Donlon's contention that the county school board is a unit of the Executive Branch of State government is determinative of whether the county school board is an entity of the State. Reduced to a syllogism, from his assumption that the county board is a State entity, Donlon asserts that the local board must be a unit of the Executive branch because it is not part of the Judicial or Legislative branches. Thus, an affirmative answer to that question leads inexorably to the conclusion that a county school teacher is a State Executive branch employee.

contending that it is not a State agency because MCPS has asserted frequently in other contexts State agency status.

In its defense, MCPS finds comfort in *Chesapeake Charter, Inc. v. Anne Arundel County Board of Education*, 358 Md. 129, 747 A.2d 625 (2000), for its view that it and its employees are not a part of the Executive Branch of State government for purposes of the WBL. As regards judicial estoppel, MCPS observes that there is nothing in Maryland law preventing an entity from contending in litigation that it is, in one context, a State agency, but a local county governmental entity for other purposes, as long as the contexts are dissimilar substantively and each supports independently the respective assertions.

### Facts and Proceedings

Because the question we confront is a purely legal one, we shall provide only such factual background as needed to supply important context.

In 2012, Donlon, a teacher at Rockville's Richard Montgomery High School ("RMHS") in the MCPS system, discovered what he believed was an inflation by RMHS staff and administration of its Advanced Placement ("AP") course statistics. Donlon accused RMHS of "awarding students credit on their report cards and transcripts when the[] [relevant] classes were in fact [Middle Years Program] classes and did not meet the criteria set by the College Board for AP credit." Donlon reported ultimately RMHS's alleged inflation of AP statistics to the County Superintendent. The Superintendent discounted Donlon's contentions.

Donlon contacted a journalist at The Washington Post, informing him of RMHS's "wrongdoing." The journalist interviewed members of the MCPS administration regarding

2

Donlon's claim. As a consequence, Donlon contends that members of RMHS' faculty supervisors retaliated against him,[2] in violation of the WBL, for his revelations to the print media. Donlon filed with the Maryland Department of Budget and Management ("DBM") a WBL complaint against MCPS.[3] Donlon requested "compensatory damages, punitive damages, costs and attorney's fees, and equitable relief." *Mont. Cnty Pub. Sch. v. Donlon*, 233 Md. App. 646, 651–52, 168 A.3d 1012, 1015 (2017), *cert. granted*, 456 Md. 522, 175 A.3d 150 (2017).

---

[2] Donlon contends that after his disclosure, the RMHS administration "shunned" him.

> Donlon further alleged that [Kim] Lansell[,the chair of Donlon's department,] and Josh Neuman–Sunshine, the assistant principal, falsely accused him of not preparing a substitute teacher properly. . . .

> Donlon alleged the school retaliated against him for speaking to the newspaper about the story when in the fall semester he was assigned no AP courses. In June 2013, Donlon was assigned to teach AP Psychology, a course that he had requested not to teach because he believed that he did not have the requisite background to teach it. The next year, in June 2014, MCPS reassigned Donlon as a floating teacher. Later in October 2014, Donlon inquired of [Lansell] why he was teaching a large class without a paraeducator, and Lansell responded very rudely to him.

> On October 24, 2014, Damon Monteleone ([RMHS's] new principal), and Lansell called Donlon to a meeting to speak to him about how he had been absent from work 42 times during the 2012–13 school year. Donlon responded that most of those absences were due to union meetings, teacher trainings, and the like.

*Mont. Cnty Pub. Sch. v. Donlon*, 233 Md. App. 646, 651–52, 168 A.3d 1012, 1015 (2017), *cert. granted*, 456 Md. 522, 175 A.3d 150 (2017).

[3] The DBM is the agency responsible for overseeing the WBL. *White v. Register of Wills of A. A. Cnty.*, 217 Md. App. 187, 193, 90 A.3d 1213, 1216 (2014); *see also* SPP §§ 5-303, 309; COMAR 17.04.08.01.

The Office of the Statewide Equal Employment Opportunity Coordinator ("OSEEOC"), as the designee of the Secretary of the DBM, conducted a review of Donlon's whistleblower complaint.[4] The DBM concluded that Donlon's complaint

> does not meet the jurisdictional requirements of the Maryland Whistleblower Law. In accordance with SPP § 5–301, the [WBL] applies to employees and State employees who are applicants for [a] position in the Executive Branch of State government . . . . MCPS [ ] is not an Executive Branch agency of State government, and therefore [Donlon's] complaint is not subject to investigation by this office. Accordingly, [Donlon's] complaint is dismissed.

Donlon appealed the DBM's ruling to the Maryland Office of Administrative Hearings ("OAH"). After a hearing, an OAH Administrative Law Judge ("ALJ") affirmed the DBM's decision, holding that

> there was no jurisdiction to hear the whistleblower claim because Donlon was not an employee of the Executive Branch of State government. The ALJ noted that the State government's [E]xecutive branch contains 19 principal departments, each of which contain subordinate units, and that MCPS is not among them. The ALJ also observed that the State Board establishes policies and guidelines throughout the State, but that it is the county boards of education that employ principals and teachers. The ALJ found that Donlon submitted no evidence that he was an employee of the executive branch and that there was no employer/employee relationship between Donlon and the executive branch. Accordingly, the ALJ concluded that Donlon was not an executive branch employee, that he could not bring a whistleblower complaint pursuant to the WBL, and that DBM and the OAH did not have jurisdiction to hear the case.

*Donlon*, 233 Md. App. at 655, 168 A.3d at 1017.

Donlon filed a petition for judicial review in the Circuit Court for Montgomery County. The circuit court, in reversing the ALJ, expressed disagreement with MCPS's

---

[4] The DBM secretary may name a designee to investigate the merits of any WBL complaint. *See* SPP § 5-309 (b)-(d).

4

argument that it may assert its status as a State entity under certain circumstances, but maintain that it is a local agency in other situations:

> THE COURT: Just so I'm clear. So [MCPS] thinks it is okay to wrap itself within the protection of the [Eleventh] Amendment to avoid getting sued in federal court but when you come into the coordinate Brach [sic] and [S]tate courts [and] say no, no, no, no. We're not [S]tate agencies for the purposes of [SPP] 5-301.

> \*         \*         \*

> THE COURT: [MCPS]'s argument is frivolous, to be blunt.

> \*         \*         \*

> [THE COURT:] It is deeply troubling to me that [MCPS] wants to be shielded when it is good for them and not part of the State when it's not good for them.

MCPS appealed to the Court of Special Appeals. As pertinent to the certiorari questions for which we granted the petition in this case (discussed *infra*), our appellate colleagues – in reliance on *Chesapeake Charter*, 358 Md. 129, 747 A.2d 625 – held "that public school teachers employed by county boards of education are not employees of the Executive Branch of State government." *Donlon*, 233 Md. App. at 665, 168 A.3d at 1023.[5] The court concluded also that

> in light of the "substantial weight" we accord DBM's view, *see White* [v. *Register of Wills of Anne Arundel County*], 217 Md. App. [187], 193, 90 A.3d 1213, [1216 (2014)] and the fact that nothing in the statutory text of SPP § 5–301 supports Donlon's argument, we conclude that, as a matter of statutory construction, the WBL does not apply to public school teachers employed by county boards of education because they are not employees of the executive branch.

---

[5] The intermediate appellate court, by concluding that public school teachers are not a part of the Executive branch, held (implicitly) that county boards of education are not units of the State Executive branch.

*Donlon*, 233 Md. App. at 666–67, 168 A.3d at 1024. The court echoed that "an entity may qualify as a State agency for some purposes, while being classified as a local agency for other purposes." *See Wash. Suburban Sanitary Comm'n v. Phillips*, 413 Md. 606, 632, 994 A.2d 411, 427 (2010). Therefore, in the context of Donlon's argument that MCPS should be estopped from disclaiming its State agency stature in the present case, the court held that the

> applicability of the WBL to MCPS, and MCPS's assertion of sovereign immunity [] are both quintessential issues of law, not of fact. It doesn't matter whether a party takes an inconsistent position compared to one taken in previous litigation. Legal arguments are not judicially estopped. . . . [Thus,] [t]he county boards were simply asserting legal arguments available to them. . . . [and] MCPS is not judicially estopped from arguing that it is not a State agency for purposes of the WBL.

*Donlon*, 233 Md. App. at 675–76, 168 A.3d at 1029–30.

We granted Donlon's petition for a writ of certiorari, *Donlon v. Mont. Cnty. Pub. Sch.*, 456 Md. 522, 175 A.3d 150 (2017), to consider the following questions:

I.   What is the relationship of county school employees to the State in the context of Maryland whistleblower protection laws?

II.  What distinctions [, if any,] matter in Maryland's application of the doctrine of judicial estoppel?

## Standard of Review

We explained in *Motor Vehicle Admin. v. Shea*, 415 Md. 1, 14–15, 997 A.2d 768, 775–76 (2010) (quoting *Motor Vehicle Admin. v. Delawter*, 403 Md. 243, 256–57, 941 A.2d 1067, 1076 (2008)), that

> [a] court's role in reviewing an administrative agency adjudicatory decision is narrow; it is limited to determining if there is substantial evidence in the

6

record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

In applying the substantial evidence test, a reviewing court decides whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court must review the agency's decision in the light most favorable to it; . . . the agency's decision is prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence and to draw inferences from that evidence.

Despite some unfortunate language that has crept into a few of our opinions, a court's task on review is not to substitute its judgment for the expertise of those persons who constitute the administrative agency. Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. Furthermore, the expertise of the agency in its own field should be respected.

*See also* Md. Code (1984, 2014 Repl. Vol.), § 10-222 of the State Government Article

("SG").[6]

---

[6] SG § 10-222 explains that a court, upon judicial review of an administrative agency's decision, may decide to:
    (1) remand the case for further proceedings;
    (2) affirm the final decision; or
    (3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:
        (i) is unconstitutional;
        (ii) exceeds the statutory authority or jurisdiction of the final decision maker;
        (iii) results from an unlawful procedure;
        (iv) is affected by any other error of law;
        (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
        (vi) is arbitrary and capricious.

The questions for which we granted Donlon's petition focus on whether county boards of education are units of the State Executive branch. These questions are purely questions of law. It is, thus, our "prerogative to determine whether [the] agency's conclusions of law are correct." *Bd. of Liquor License Comm'rs for Balt. City v. Kougl*, 451 Md. 507, 513, 154 A.3d 640, 644 (2017) (quoting *Adventist Health Care, Inc. v. Md. Health Care Comm'n*, 392 Md. 103, 120–21, 896 A.2d 320, 331 (2006)).

In *Phillips*, 413 Md. at 618-19, 994 A.2d at 419 (quoting *Lockshin v. Semsker*, 412 Md. 257, 274-78, 987 A.2d 18, 28-29 (2010) (internal citations omitted)), we iterated the canons guiding us in the process of divining legislative intent:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.
>
> To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the language of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.
>
> We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.
>
> Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a

8

larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions.

> In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

In addition, we presume that the Legislature is

> to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law. Absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory.

*Bd. of Ed. of Garrett Cnty. v. Lendo*, 295 Md. 55, 63, 453 A.2d 1185, 1189 (1982).

## Analysis

### I. County Boards of Education and the State Executive Branch.

Donlon grounds his contentions on what he believes to be well-established Maryland law holding that county boards of education are State agencies across-the-board. As this goes, county boards of education must be units of the State Executive branch because clearly they are not units of the Judicial or Legislative branches. The Maryland State Board of Education ("MSBE"), a county board's canonical State agency overseer,[7] exercises considerable administrative influence, control, and oversight over county boards. Thus, to the extent the Court of Special Appeals relied on the holding of *Chesapeake Charter* to reject Donlon's view, it did so based on an inappropriately expansive reading

---

[7] At the head of the Maryland State Department of Education ("MSDE") is the MSBE. Educ. § 2-102(a). Throughout this opinion we will refer interchangeably to the MSDE and MSBE, unless the context indicates otherwise.

of that opinion.  To that end, Donlon points to *Beka Indus., Inc. v. Worcester County Bd. of Educ.*, 419 Md. 194, 217, 18 A.3d 890, 904 (2011), which explained that *Chesapeake Charter's* holding was "a narrow one."

Donlon urges upon us that the frequency of Maryland cases holding county school boards to be agents of the State should compel us to read the WBL to extend protection to public school teachers.  Donlon insists, at the very least, that the WBL is ambiguous as to its coverage in this regard.  Thus, recourse to the canon of statutory interpretation of *in pari materia* is necessary to pierce the enigma, by harmonizing the WBL with the Public School Employee Whistleblower Protection Act (the "PSEWPA"), Md. Code (2017, 2018 Repl. Vol.), §§ 6-901–906 of the Education Article ("Educ.") (effective 1 October 2017), which extends expressly whistleblower protection to "any individual who is employed by a public school employer or an individual of equivalent status in Baltimore City."

MCPS, in response, directs our attention to *Phillips*, contending that "an entity may qualify as a state agency for some purposes while being classified as a local agency for other purposes." 413 Md. at 632, 994 A.2d at 427.  MCPS concedes that this Court has stated frequently that county boards of education are State agencies.  These occasions, however, are characterized by MCPS as either dictum or occur in the limited context of asserting Eleventh Amendment/sovereign immunity defenses.  As MCPS's argument goes, although a county school board may invoke its State-delegated sovereign function in appropriate circumstances, some operations are local predominately in structure and/or character, such that it is impossible to classify the board for all purposes as a State entity. *See Chesapeake Charter*, 358 Md. at 137-40, 747 A.2d at 629-31.

10

Furthermore, MCPS marshals as authorities the PSEWPA, *Chesapeake Charter*, and published opinions of the MSBE and the Maryland Attorney General's Office confirming the view that public school employees, like Donlon, are not extended WBL protection. The PSEWPA excludes State employees from its definition of "public school employee." *See* Educ. § 6-901 (b)(2) ("Public school employee" does not include a State employee.). Thus, if we were to hold county school boards to be State agents, then by PSEWPA definition, they are not protected "Public School Employees."

MCPS notes that, at the same time Donlon invokes the canon of *in pari materia* and implores this Court to meld the WBL with the PSEWPA, he offers no legal analysis for how the Court can blend harmoniously the two statutes to extend WBL coverage to public school teachers. MCPS contends as inapt applying in *pari materia* to two statutes that render relief to alternative classifications of employees through different enforcement mechanisms.

It is accurate to observe that we have referred to county boards of education as State entities in a variety of contexts, but none are consequential to the present case. Those expressions appeared only in dictum, for one thing. Even in those instances, it is obscure sometimes as to why those conclusory statements were made. *See State v. Bd. of Educ. of Mont. Cnty.*, 346 Md. 633, 635 n. 1, 697 A.2d 1334, 1335 n. 1 (1997) (stating in dictum, in the context of an "intra-governmental dispute between a principal department of the State government and a [assumed] State agency, the Board of Education of Montgomery County" that "[t]he various county boards of education are State agencies."); *Bd. v. Sec'y of Pers.*, 317 Md. 34, 44 n. 5, 562 A.2d 700, 705 n. 5 (1989) (explaining in dictum, in the

11

context of whether the Prince George's County Board of Education had a right to challenge the audit procedures for education records, that it "is settled that county boards of education are State agencies"); *Bd. of Educ. v. Prince George's Cnty. Educators' Ass'n*, 309 Md. 85, 95 n. 3, 522 A.2d 931, 936 n. 3 (1987) (addressing a challenge to whether the statutory grounds for vacating an arbitration award are applicable, the Court stated in dictum that "[c]ounty boards of education are, of course, state agencies and not agencies of the county governments."); *Mont. Cnty. Ed. Ass'n v. Bd. of Educ.*, 311 Md. 303, 317, 534 A.2d 980, 987 (1987) (recognizing county boards of education as State agencies, in the course of contextualizing the issue of whether "the employees' designated representatives may require a public school employer to negotiate, and thus possibly to arbitrate, the issues of the school calendar and job reclassification."); *McCarthy v. Bd. of Educ. of A.A. Co.*, 280 Md. 634, 639–50, 374 A.2d 1135, 1138–43 (1977) (mentioning that the Anne Arundel County Board of Education is a State Agency, in reaching its ultimate conclusions on preemption, and the county council could not legislate in the field and place additional duties upon the county board); *Bd. of Ed. v. Mont. Cnty.*, 237 Md. 191, 197, 205 A.2d 202, 205 (1964) (determining, in the context of whether the Montgomery County Board of Education was entitled to the surplus of collected school tax levies, that the board is neither a branch of the county government nor an agency under its control). Until *Chesapeake Charter*, we were not presented with a question conducive to the premise whether county boards are, in fact, State agencies or units of the Executive branch of government, apart from questions of sovereign immunity.

Whether a county board of education is a State agency has arisen in recent times in the context of Eleventh Amendment/sovereign immunity challenges. *See Lee–Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248 n. 5 (4th Cir. 2012) (concluding that county boards of education are arms of the State entitled to Eleventh Amendment immunity; moreover, the court accepted arguments made by the county board that federal and state courts concluded that Maryland boards of education are State agencies for Eleventh Amendment immunity purposes.); *Jones v. Fred. Cnty. Bd. of Educ.*, 689 F. Supp. 535 (D. Md. 1988) (concluding that the Frederick County Board of Education is an agent of the State of Maryland entitled to Eleventh Amendment immunity); *Beka*, 419 Md. at 210, 18 A.3d at 900 ("affirm[ing] that a county board of education, is 'a State agency entitled to governmental immunity'" when assessing whether a county board of education is subject to a statutory waiver of immunity); *Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert*, 409 Md. 200, 205, 973 A.2d 233, 236 (2009) (there was no contention between the parties that the Baltimore County Board of Education was a State agency for purposes of whether a provision in the Maryland Code's Courts and Judicial Proceedings Article waives the board's Eleventh Amendment immunity); *Norville v. Bd. of Educ.*, 160 Md. App. 12, 35–62, 862 A.2d 477, 489–507 (2004) (Anne Arundel Board of Education is an arm of the State for purposes of Eleventh Amendment immunity); *see also Bd. of Trs. of Howard Cnty. Coll. v. John K. Ruff, Inc.*, 278 Md. 580, 588, 366 A.2d 360, 365 (1976) (a community college, funded partially by local funds, is an agency of the State for purposes of sovereign immunity).

To understand whether the powers and functions of the local boards of education support distinguishing their status as State or local entities, we begin with some perspective as to the MSBE's role. The MSBE exercises broad dominion and control over the administration of the public-school system in Maryland. We explained in *Bd. of Educ. of Prince George's Cnty. v. Waeldner*, 298 Md. 354, 359–61, 470 A.2d 332, 335 (1984), that,

> [u]nder [Educ.] § 2–205(g)(2) . . . , the State Board is directed to "exercise general control and supervision over the public schools and educational interests of this State." [Educ. §] 2–205(b) empowers the State Board to "[d]etermine the elementary and secondary educational policies of this State"; § 2–205(c) directs the State Board to "adopt bylaws, rules, and regulations for the administration of the public schools." [Educ. §] 2–205(e) provides that the State Board "shall explain the true intent and meaning of the provisions of . . . [the Education Article] . . . within its jurisdiction"; the same subsection mandates that the State Board "shall decide all controversies and disputes under these provisions" and further states that "[t]he decision of the Board is final."
>
> The totality of these provisions has been described as a visitatorial power of such comprehensive character as to invest the State Board with the last word on any matter concerning educational policy or the administration of the system of public education. The broad sweep of the State Board's visitatorial power has been consistently recognized and applied since the principle was first enunciated in 1879 in *Wiley v. School Comm'rs*, 51 Md. 401. The power of visitation vested in the State Board is one of general control and supervision; it authorizes the State Board to superintend the activities of the local boards of education to keep them within the legitimate sphere of their operations, and whenever a controversy or dispute arises involving the educational policy or proper adminsitration [sic] of the public school system of the State . . . .

(internal citations, quotation marks, and alterations omitted). Moreover, "the [MSBE's] power authorizes it to correct all abuses of authority and to nullify all irregular proceedings" of county boards. *Waeldner*, 298 Md. at 361, 470 A.2d at 335. This implies that MSBE acts as the administrative entity of last resort, *see Chesapeake Charter*, 358

14

Md. at 139, 747 A.2d at 631, rather than the first step to be climbed on the ladder to administrative relief.

Maryland Code (1984, 2014 Repl. Vol.) § 8-201 of the State Government ("SG") Article lists 19 principal departments of the Executive branch of State government. As the Court of Special Appeals noted, county boards of education are not enumerated in SG § 8-201.[8] Nevertheless, county school boards exist by virtue of the acts of the General Assembly and have been categorized as State agencies, but also recognized as possessing a hybrid nature. *See Beka*, 419 Md. at 212, 18 A.3d at 901 (referring to county boards of education as hybrid in nature); *Clauss v. Bd. of Ed. of Anne Arundel County*, 181 Md. 513, 520, 30 A.2d 779, 782 (1943) ("it is not necessary for the purposes of the present case to determine whether in all cases the Board of Education of Anne Arundel County is an agency of that County. It may, for some purposes, be an agency of the State."); *Dean v. Bd. of Educ. of Cecil County*, 71 Md. App. 92, 98, 523 A.2d 1059 (1987) (County boards of education in Maryland seem to have a "peculiar hybrid nature," with attributes of both State and county government). Entities "may qualify as a State agency for some purposes, while being classified as a local agency for other purposes." *Phillips*, 413 Md. at 632, 994 A.2d at 427. County boards of education defy "simple and definitive categorization as

---

[8] MSDE is unlisted, additionally, among the SG § 8-201 Executive branch departments. Educ. § 2-101 does, however, call-out the MSDE as a "principal department of the State Government." *Cf. Maryland State Dept. of Educ. v. Shoop*, 119 Md. App. 181, 200, 704 A.2d 499, 508 (1998) (MSDE, "*acting in its executive capacity*, [] conducted an informal grievance conference regarding the one-day suspension based on what it believed were two discrete and isolated policy transgressions." (emphasis added)).

either a 'State' or 'local' agency or instrumentality for any and all purposes." *Phillips*, 413

Md. at 630, 994 A.2d at 426.[9]

We elaborated in *Chesapeake Charter* on the hybrid nature of county school boards

of education. In *Chesapeake Charter*, we were charged with determining "whether [the

Anne Arundel County Board of Education] is subject to the General Procurement Law[10]

and, as a result, [Maryland State Board of Contract Appeals] [(]MSBCA[)] has any

jurisdiction in this matter, hinges on whether a county school board is 'a unit' within the

meaning of that law." *Chesapeake Charter*, 358 Md. at 134, 747 A.2d at 628.

We explained that

> although the county boards are generally regarded as State agencies because
> they are part of the State public education system, are subject to extensive
> supervision and control by the State Board of Education, and exercise a State
> function, from a budgetary and structural perspective, they are local in
> character. They are not divisions of or units within the State Department of

---

[9] *Phillips* cited, in support of this assertion,
*See, e.g., Rucker v. Harford C*[]*nty*, 316 Md. 275, 289–90, 558 A.2d 399, 406 (1989) (noting that, although the Court found sheriffs to be State officials under Maryland law, "for some purposes and in some contexts," a sheriff may be treated as a local government employee); *Clea v. Balt*[.], 312 Md. 662, 670 n. 5, 541 A.2d 1303, 1306 n. 5 (1988) ("We are aware, of course, that the General Assembly's designation of the Baltimore City Police Department as a state agency would not be controlling for all purposes."); *Washington Suburban Sanitary Comm'n v. C.I. Mitchell & Best C*[*nty*]*.*, 303 Md. 544, 561, 495 A.2d 30, 38 (1985) (stating that WSSC "is a state agency which is out of the mainstream," but holding nevertheless that WSSC "is not a state agency within the meaning of Art. 81, § 215," a statute authorizing individuals to file claims against State agencies to collect refunds for money "erroneously or mistakenly paid" to the agency, because WSSC's budget "is not included in the state budget submitted by the Governor and approved by the General Assembly").
413 Md. at 630, 994 A.2d at 426.
[10] The General Procurement Law is codified in the Maryland Code as Division II (titles 11 through 17) of the State Finance and Procurement Article ("S.F.P.").

16

Education. They are subject to the county, not the State, budget process and must justify their budget requests to the county government. Most of their operational funding comes from the county, not the State, government. When these factors are taken into account, it is clear that the general characterization of county boards of education as State agencies does not require a finding that they are entities "in the Executive Branch of the State government" for purposes of S.F.P. § 11–101(x).

358 Md. at 139–40, 747 A.2d at 630–31. In noting that county school boards owe their existence to the Legislature, we observed that

[i]n 13 counties, the members of the board are elected by the voters of the county ([Educ.] § 3–114); in Baltimore City, the members of the board, other than a student member, are appointed jointly by the Governor and the Mayor of Baltimore ([Educ.] § 3–108.1); in the other counties, the members are appointed by the Governor from among the residents of the county ([Educ.] § 3–108). *The county school systems are funded in part by the State and in part by the counties. Hornbeck v. Somerset C[nty]. Bd. of Educ.*, 295 Md. 597, 458 A.2d 758 (1983). Although in terms of their composition, jurisdiction, funding, and focus, they clearly have a local flavor, the county school boards have consistently been regarded as State, rather than county, agencies.

*Chesapeake Charter*, 358 Md. at 135–36, 747 A.2d at 628–29 (emphasis added). We continued that

[c]ounty school boards are considered generally to be State agencies because (1) the public school system in Maryland is a comprehensive Statewide system, created by the General Assembly in conformance with the mandate in Article VIII, § 1 of the Maryland Constitution to establish throughout the State a thorough and efficient system of free public schools, (2) the county boards were created by the General Assembly as an integral part of that State system, (3) their mission is therefore to carry out a State, not a county, function, and (4) they are subject to extensive supervision by the State Board of Education in virtually every aspect of their operations that affects educational policy or the administration of the public schools in the county.

*Chesapeake Charter*, 358 Md. at 136-37, 747 A.2d at 629. The Court made clear, however, "[a]lthough legally State agencies for those reasons, they are not normally regarded, for

*structural* or budgetary purposes, as units within the Executive Branch of the State government." (emphasis added). The General Assembly struck a careful balance when crafting the local and State roles to be exercised by county boards.[11] Notably, the county boards of education retain unique autonomy aspects, irrespective of the MSBE's authority:

> The county school board is the head of the county department and is responsible for administering, in the county, the supervening State policy determined by the State Board of Education, in accordance with State Board's directives. *See* [Educ.] § 4–108. There is, as well, a county superintendent, who is the executive officer of the county board and, in essence, the chief executive officer of the county department. Finally, there are the teachers, principals, and other professional, administrative, clerical, security, transportation, and maintenance staff hired by the county school board to work in or service the schools in the county. Unlike the situation at the State level, the county superintendent and the employees of the county department of education are appointed and their salaries are set by the county school board upon recommendation of the county superintendent, [Educ.] § 4-103(a), in accordance with a personnel system established by the county board.

*Chesapeake Charter*, 358 Md. at 138–39, 747 A.2d at 630. We concluded in the context of *Chesapeake Charter* that the county board's school bus contracts were not subject to the General Procurement Law because the board did not fall within the purview of the statute.

---

[11] *Chesapeake Charter* explained that

the State government structure for primary and secondary education is the State Department of Education, created by [Educ.] § 2–101 "as a principal department of the State government." The Department consists of (1) the [MSBE], which is the head of the Department ([Educ.] § 2–102) and is vested with ultimate supervisory authority for determining educational policy in Maryland and administering the public school system, (2) the State Superintendent of Schools, who is a member of the Governor's Executive Council ([Educ.] § 2–303(d)) and serves, in essence, as the chief executive officer of the Department, and (3) the other professional, administrative, and clerical employees employed by the Department, who are State government employees for budgetary and personnel purposes.

358 Md. at 137, 747 A.2d at 629.

18

*Chesapeake Charter*, 358 Md. at 139, 747 A.2d at 631-32.  Indeed, county boards, "from a budgetary and structural perspective, [] are local in character. *They are not divisions of or units within*" the State government." *Chesapeake Charter*, 358 Md. at 139, 747 A.2d at 631 (emphasis added).

The holding of *Chesapeake Charter* may be "narrow," when examined through a particular lens. *Beka*, 419 Md. at 217, 18 A.3d at 904.  The Court, in *Chesapeake Charter*, signaled, however, a change-in-course and affirmed intrinsically a statement made in *Clauss*, 181 Md. at 520, 30 A.2d at 782 ("County boards may, for some purposes, be an agency of the State," and local for others), a principle refined later (albeit addressing a so-called bi-county agency, the Washington Suburban Sanitary Commission) in *Phillips*, 413 Md. at 632, 994 A.2d at 427, that "an entity may qualify as a State agency for some purposes, while being classified as a local agency for other purposes." *See O & B Inc. v. Md.–Nat'l Cap. P. & P.*, 279 Md. 459, 462, 369 A.2d 553 (1977) ("There is no single test for determining whether a governmental body is an agency of the state *for purposes of sovereign immunity*.  Rather it is necessary to examine the relationship between the state and the governmental entity to determine its status as either a state agency or a county or municipal agency." (emphasis added)).

Donlon contends that *Beka* cabined properly *Chesapeake Charter* by explaining that *Chesapeake Charter* represented an anomalous departure from the overwhelming support in our jurisprudence holding county boards of education as State agencies.  We do not believe that *Beka* restricted *Chesapeake Charter* to the extent that Donlon suggests.

19

In *Beka*, one question[12] (ostensibly relevant here) was whether a county board of education retained its right to sovereign immunity asserted in defense to a breach of contract action under SG § 12-201.[13] *Beka*, 419 Md. at 209, 18 A.3d at 900. Beka asserted that "in the context of [a breach of contract for the construction of a public school], the [County] Board is a 'unit' of the State pursuant to SG § 12–201, and this statute waives [the County Board's] right to the defense of sovereign immunity in contract actions." *Id.* We disagreed, opining that if county boards of education can assert sovereign immunity, then they are subject also to a statutory waiver of that immunity. *Beka*, 419 Md. at 210, 18 A.3d at 900.

> In recognizing this distinction, the Court discussed *Chesapeake Charter*, stating
>
> that a local school board is not a "unit" of State Government for purposes of the General Procurement Law because the "procurement of supplies and services by the county boards of education" in contrast to school construction, has never been subject to the general authority of the Board of Public Works, or the Department of General Services

*Beka*, 419 Md. at 213, 18 A.3d at 902. *Chesapeake Charter* drew this distinction for purposes of the General Procurement Law. *Beka*, 419 Md. at 214, 18 A.3d at 903. It did not foreclose, in *Beka*, a different analysis and holding regarding the Worcester County

---

[12] We granted certiorari in *Beka* to consider six questions.

[13] SG § 12-201 provides that, in general,
the State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, in a court of the State, based on a written contract that an official or employee executed for the State or 1 of its units while the official or employee was acting within the scope of the authority of the official or employee.

20

Board of Education as a State "unit" for purposes of our application of the SG §12-201 sovereign immunity waiver. *Id.*

*Beka* reiterated that, for purposes of Eleventh Amendment/sovereign immunity analysis, local boards of education are entities of State government. *Beka*, 419 Md. at 210, 18 A.3d at 900; *see also Lee–Thomas*, 666 F.3d at 248 n.5; *Zimmer-Rubert*, 409 Md. at 205, 973 A.2d at 236; *Norville v. Board of Education*, 160 Md. App. at 35–62, 862 A.2d at 489–507.  In doing so, *Beka* noted that *Chesapeake Charter* did not involve an issue of sovereign immunity. *Beka*, 419 Md. at 216, 18 A.3d at 904 ("Consequently, sovereign immunity was not an issue in [*Chesapeake Charter*].").  On the other hand, sovereign immunity was preeminent to *Beka's* conclusion that the county board was a State unit. *Id. Beka* distinguished further *Chesapeake Charter* based on the differing statutes at issue.  In the context of a sovereign immunity analysis, we held that the local budgetary character of county boards of education "appears insufficient to overcome the overwhelming support in our case law for the notion that county boards of education are" State agencies. *Beka*, 419 Md. at 217, 18 A.3d at 904.

For present purposes, sovereign immunity is extraneous to the purpose and legislative history of the WBL.  The contention here is whether the county board of education is a State agency subject to the WBL. *Accord Chesapeake Charter*, 358 Md. 129, 747 A.2d 625.  The WBL protects "all employees and State employees who are applicants for positions in the Executive Branch of State government, including a unit with an

21

independent personnel system," SPP § 5-301,[14] from reprisal if the employee discloses

information protected under SPP § 5-305.[15] The WBL was proposed initially in 1980 as

House Bill (H.B.) 616. The preamble to H.B. 616 states, in pertinent part:

> [t]he General Assembly finds that the interests of the citizens of Maryland demand a government which operates in accordance with the law and in avoidance of mismanagement, monetary waste, abuse of authority, and danger to public health and safety. In furtherance of these goals, it is essential that *classified State employees* be free to disclose impropriety in exercise of their constitutional right of free speech.

(emphasis added). The prefatory statement of H.B. 616 notes that its purpose "is to prohibit

any State appointing authority[[16]] from using *a personnel action* as a retaliatory measure

against an employee or applicant for State employment who has made a disclosure of

illegality or impropriety." (emphasis added).

---

[14] There is no dispute over the meaning of SPP § 5-301. Thus, we agree with and reiterate the holding of the Court of Special Appeals:
> [w]e construe [SPP § 5-301] to mean that a unit may still be within the Executive Branch of State government (for purposes of the WBL) if it has an independent personnel system; rather than to mean that if a unit has an independent personnel system, that, in and of itself, is evidence that the unit is a State agency.

*Donlon*, 233 Md. App. at 656 n.7, 168 A.3d at 1018 n.7.

[15] SPP § 5-305 provides that a supervisor, appointing authority, or the head of a principal unit may not take or refuse to take any personnel action as a reprisal against an employee who:
> (1) discloses information that the employee reasonably believes evidences:
>> (i) an abuse of authority, gross mismanagement, or gross waste of money;
>> (ii) a substantial and specific danger to public health or safety; or
>> (iii) a violation of law; or
> (2) following a disclosure under item (1) of this section seeks a remedy provided under this subtitle or any other law or policy governing the employee's unit.

[16] I.e., the Department of Transportation. *See* Md. Code (1992, 2015 Repl. Vol.), § 2-103.4 of the Transportation Article (Transp.))

22

Local members of a county board are either: elected by the registered voters of their county, Educ. § 3-114;[17] appointed by the governor, Educ. § 3-108; or, selected by a specific procedure in Baltimore City, Harford County, or Caroline County, *Id.* Thus, county boards are responsive to the citizens of their specific counties. Additionally, county school system teachers are not employed by the State. Rather, county boards hire their public school teachers. *See* Educ. § 4-103 ("each county board shall: (1) Appoint all principals, teachers, and other certificated and non-certificated personnel; and (2) Set their salaries."). In turn, the county board is charged also with overseeing all disciplinary actions of, and direct appeals from *inter alia*, public school teachers. Educ. § 6-202.

We elaborated specifically, in *Chesapeake Charter*, 358 Md. at 138–39, 747 A.2d at 630, on the local flavor of a county board of education's budgeting process. The blend of State, local, and independent characteristics of a county board extends beyond local budgetary concerns.[18] Personnel matters are inherently local at their inception. "This

---

[17] Educ. § 3-114 (b)-(f) explains that the Boards of Education of Baltimore City, Baltimore County, Caroline County, Harford County, and Prince George's County contain certain members who are elected and others who are appointed. *See also* Fiscal and Policy Note for H.B. 160 (2017) for a descriptive list of all Maryland county boards of education and their respective means of member selection.

[18] As MABE's *amicus curiae* brief in this matter notes correctly:
[t]he Legislature has recognized and acknowledged the unique character of Local Boards in a number of statutory provisions and when the Legislature intended to provide Local Boards with the attributes of the State, it has done so explicitly and expressly, as illustrated by the following examples:
- Local Boards are [] given the power to "bring condemnation proceedings to acquire land under Title 12 of the Real Property Article." [Educ.] § 4-119.
- Although there is a Maryland Public Ethics Law applicable to State employees, the Legislature established separate provisions governing "the conflict of interest standards, financial disclosure requirements,

becomes evident when we examine the place of county school boards in the structure and

governance of public education in Maryland."[19] *Chesapeake Charter*, 358 Md. at 137, 747

A.2d at 629.

> The authority of [MSBE], codified in part in [Educ.] § 2–205, has been described as "a visitatorial power of the most comprehensive character," one that is "in its nature, summary and exclusive. It includes (1) determining the primary and secondary educational policies of the State, (2) explaining the true intent and meaning, causing to be carried out, and deciding all controversies and disputes arising under the provisions of the Education Article that are within its jurisdiction, (3) adopting by-laws, having the force of law, for the administration of the public schools, (4) through the State Superintendent of Schools, exercising general control and supervision over the public schools and educational interests of the State, (5) preparing the annual State public school budget, including appropriations for State aid to the counties for current expenses, student transportation, and public school

---

> and lobbying regulations" of Local Boards and their employees. Md. Code, General Provisions Article, § 5-815.
>
> - The Maryland Public Information Act defines an "official custodian" as an "officer or employee of the State or of a political subdivision[,]" and further [] defines "political subdivision" as including a "school district." Md. Code, General Provisions Article, § 4-101(f) and (i)(4) (emphasis added).
> - The Maryland Tort Claims Act, Md. Code, [SG], §1-101, *et seq.*, does not apply to Local Boards. Local Boards are required to "carry comprehensive liability insurance to protect the board and its agents and employees," Md. Code, Education Article, §4-105(a)(1), and Local Boards and their employees are provided [with] their own immunity statute in Md. Code, Courts and Judicial Proceedings Article, § 5-518.
> - The [E]lections [L]aw contains a separate subtitle applicable to the election of members to an elected Local Board. Md. Code, Election Law Article, § 8-801, *et seq.*
> - Section 10-301, *et seq.* of the State Government Article, concern[ing] protection of information by government agencies, . . . in § 10-301(a), defines "unit" and[, in] subsection (b) . . . includ[es], *inter alia*, a "county board of education."

[19] Educ. §§ 6-101-122 governs personnel matters in a county public educational system.

construction, and, (6) specifying the information each county board is required to record and the form in which it is to be recorded.

*Chesapeake Charter*, 358 Md. at 138, 747 A.2d at 630. As to personnel matters and discipline, the Legislature delegated antecedent authority to county boards distinct from MSBE. County boards possess, in conjunction with the authority enumerated above, additional exclusive responsibilities over personnel matters.[20]

For example, as it relates to the present question, county boards of education: (1) control educational matters effecting their counties, Educ. § 4-101; (2) carry out the provisions of the Education Article and the bylaws, rules, regulations, and policies of the MSBE while retraining the initial discretion over all local matters, Educ. § 4-108; (3) subject to Educ. § 6-203, the county superintendent shall decide[21] all controversies and disputes that involve the county board's rules and regulations and those involving the

---

[20] In *Bernstein v. Bd. of Ed. of Prince George's Cnty.*, 245 Md. 464, 470-72, 226 A.2d 243, 247-48 (1967), we explained that

> [a] county board of education such as the appellee is an administrative agency but it is not a State agency authorized by law to make rules or adjudicate cases. No decisions of this Court support the appellants' contention [to] the contrary. Cases such as *Coddington v. Helbig*, 195 Md. 330, 73 A.2d 454 (1950); *Hanna v. Board of Educ. of Wicomico County*, 200 Md. 49, 87 A.2d 846 (1952); *Board of Educ. of Montgomery County v. Montgomery County*, 237 Md. 191, 205 A.2d 202 (1964) and *Dixon v. Carroll County Bd. of Educ., 241 Md. 700, 217 A.2d 364* (1966), deal with the statutory powers of county boards of education vis-a-vis the County Commissioners or the general powers of such boards as administrative agencies. *A board is not a State agency under the Act merely because, under its statutory authorization, it has administrative powers in the county to which its jurisdiction is limited.*

(emphasis added).

[21] Decisions by the county superintendent "may be appealed to the county board if taken in writing within 30 days after the decision of the county superintendent. The decision may be further appealed to the MSBE if taken in writing within 30 days after the decision of the county board." Educ. § 4-205.

proper administration of the county school system, Educ. § 4-205; and, (4) may suspend or dismiss a teacher, principal, supervisor, assistant superintendent, or other professional assistant, Educ. § 6-202.

If disciplined, a teacher, principal, supervisor, assistant superintendent, or other professional assistant, may request a *hearing before the county board* within 10-days of receiving notice of the charges against the individual. Educ. § 6-202.[22] (emphasis added). The individual *may* appeal from the decision of the county board to the MSBE *only after* a decision is rendered by the county board. *Id.* (emphasis added). A county board of education possesses administrative decision-making capacity, but unlike the MSBE, it is not a State agency authorized by law to make rules or adjudicate cases. *Bernstein v. Bd. of Ed. of Prince George's Cnty.*, 245 Md. 464, 472, 226 A.2d 243, 248 (1967) (A county school board is not a State agency merely because, under its statutory authorization, it has limited administrative powers).[23]

---

[22] Chapter 13 (S.B. 639, H.B. 1758) of the 2018 Session Laws (effective 1 October 2018) amended Educ. § 6-202 "authorizing certain public school personnel to request arbitration under certain circumstances; specifying the procedures for arbitration . . . [and] providing that an arbitrator's decision and award is final and binding on the parties, subject to review by a circuit court."

[23] This list is not exhaustive. Although it is true that we have referred often in our cases to the MSBE's power as being comprehensive in character, it is not without limit. MSBE is authorized to

> superintend the activities of the local boards of education to keep them within the legitimate sphere of their operations, and whenever a controversy or dispute arises involving the educational policy or proper administration of the public school system of the State, the State Board's visitorial power authorizes it *to correct all abuses of authority and to nullify all irregular proceedings.* But the State Board's visitatorial power . . . cannot be exercised fraudulently, in bad faith, or in breach of trust; neither can it be asserted to finally decide purely legal questions or exercised in contravention of statute.

26

All regulations effecting educational matters are found within the Education Article, unless otherwise indicated in the statute. The WBL is located in the State Personnel and Pensions Article. It is bereft of any cross-references to statutes containing delegated authority to a local entity. The county boards' dominion over local personnel matters contrasts sharply with the jurisdictional control of the MSBE, which controls statewide educational matters. *See Bernstein*, 245 Md. at 470-72, 226 A.2d at 247-48. Much of MSBE's power is carried-out via civil subdivisions of government subject to varying degrees of delegation, e.g., local boards administer State functions within its county, but oversee domestic affairs relatively autonomously from the State. *Compare* Educ. § 4-108, *with* Educ. § 6-202.

---

*Zeitschel v. Bd. of Ed. of Carroll County*, 274 Md. 69, 81, 332 A.2d 906, 912–13 (1975).

The WBL, being a remedial statute,[24] is to be read broadly in favor of claimants, where possible.[25] The WBL is not expansive enough, however, to cover under its umbrella county boards and their school teachers, a view shared by the MSBE.[26] Sovereign immunity claims aside, we have held that county boards of education are not State agencies. *Chesapeake Charter*, 358 Md. 129, 747 A.2d 625 (General Procurement Law); *Bernstein*, 245 Md. 464, 226 A.2d 243 (county board of education is not a State agency

---

[24] As explained in *Washington Suburban Sanitary Comm'n v. Lafarge N. Am., Inc.*, 443 Md. 265, 282 n.18, 116 A.3d 493, 503 n.18 (2015):

> "'Under Maryland law, statutes are remedial in nature if they are designed to correct existing law, to redress existing grievances and to introduce regulations conducive to the public good.'" *Langston v. Riffe*, 359 Md. 396, 409, 754 A.2d 389, 396 (2000) (quoting *Weathersby v. Kentucky Fried Chicken Nat'l Management C[nty]*., 86 Md. App. 533, 550, 587 A.2d 569, 577 (1991)); *accord State v. Barnes*, 273 Md. 195, 208, 328 A.2d 737, 745 (1974). Also described as remedial are "statutes intended to correct defects, mistakes and omissions in the civil institutions and the administration of the state." 3 Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 60:2 (7th ed.) (citing *Langston,* 359 Md. at 396, 754 A.2d at 389).

The WBL provides a remedy for retaliatory reprisals taken against an employee in response to the employee's disclosure of information the employee reasonable believes to be "an abuse of authority, gross mismanagement, or gross waste of money, a substantial and specific danger to public health or safety, or a violation of law." SPP § 5-305 (1)(i)-(iii).

[25] *Lafarge*, 443 Md. at 283, 116 A.3d at 503 (citing *Employees' Ret. Sys. of City of Balt. v. Dorsey*, 430 Md. 100, 113, 59 A.3d 990, 997 (2013)).

[26] Decisions by the MSBE, as an administrative body created specifically by statute to manage the public education system, are afforded great deference. *Balt. Cty. Bd. of Sch. Com'rs v. City Neighbors Charter Sch.*, 400 Md. 324, 343, 929 A.2d 113, 124 (2007). We find notable, in our analysis, a decision by the MSBE. In *Casto v. Wash. Cnty Bd. of Ed.*, Case No. 99-8 (MSBE, 23 February 1999), the MSBE considered a challenge by a county school teacher alleging that her employment was terminated by the county public school in violation of the WBL. The MSBE held as moot the teacher's complaint because the WBL applies to employees within the Executive Branch of State Government and is not applicable to an employee of a local school system[. Thus, Casto's] "Whistleblower" claim has no merit. *See* SPP § 5-301 *et seq.* Based on our reading of the MSBE's *amicus* brief here, the MSBE's views have not changed in this regard since the 1999 *Casto* case.

28

subject to the State Administrative Procedure Act); *Clauss*, 181 Md. 513, 520, 30 A.2d 779, 782 (1943) (State Workmen's Compensation Act); *Bd. of Educ. of Cecil Cnty., to Use of Int'l Bus. Machines Corp. v. Lange*, 182 Md. 132, 137, 32 A.2d 693, 695 (1943) (performance bonds to State agencies).

Also of persuasive force are opinions from the Maryland Attorney General's Office regarding the status of a county board of education as a local entity. Although we are not bound by an Attorney General's opinion, "when the meaning of legislative language is not entirely clear, such legal interpretation [by the Attorney General] should be given great consideration in determining the legislative intention." *State v. Crescent Cities Jaycees*, 330 Md. 460, 470, 624 A.2d 955, 960 (1993); *Read Drug & Chem. Cnty. v. Claypoole,* 165 Md. 250, 257, 166 A. 742, 745 (1933). We presume the Legislature is aware of the Attorney General's statutory interpretation and, in the absence of enacting a change to the statutory language subsequent to the issuance of such an opinion, to acquiesce in the Attorney General's construction. *Claypoole*, 165 Md. at 257–58, 166 A. at 742.

The Attorney General's Office demonstrated, over a long period of time, awareness of the complexity in actualizing a rigid or fixed local versus State classification for county boards of education. Indeed, former Maryland Attorney General Stephen H. Sachs explained that

> [a]lthough, in dicta, the Court of Appeals referred to county boards of education as State agencies in *Ruff*[, 278 Md. 580, 366 A.2d 360] and referred to the Board of Education of Anne Arundel County as a State agency in *McCarthy*, [280 Md. 634, 639–50, 374 A.2d 1135, 1138–43] *we believe that the Court did not intend such designation to apply unvaryingly to county boards of education in all contexts*. Rather . . . it is apparent that the Court of Appeals recognizes that the appropriate designation of a county board of

29

education *depends on the context of the board authority or function in question.* For some limited purposes the board of education might be designated as a State agency, while for other purposes it will be designated as a local agency.

65 Md. Op. Atty. Gen. 356, n. 3 (1980) (emphasis added). General Sachs' opinion continued that "the [c]ounty [b]oard is not 'an executive agency of the State government' for purposes of the Maryland Public Ethics Law. Having so concluded, we believe that the members of the County Board may be viewed as 'local officials.'" *Id.*; *see also* 65 Md. Op. Atty. Gen. 385 (1980) (opining, in the context of whether local boards of education are considered State employees for purposes of obtaining payment of attorney's fees and costs, that "the members of a local board of education are 'local officers' and, notwithstanding their exercise of sovereignty, not 'State officers' within the meaning of" the statute authorizing an award of attorney's fees.); 59 Md. Op. Atty. Gen. 644 (1974) (State Procurement of Architectural and Engineering Services Act); 58 Md. Op. Atty. Gen. 343 (1973) (State Financial Disclosure Act); 53 Md. Op. Atty. Gen. 183 (1968) (Article XVII, § 3 of the Maryland Constitution); 47 Md. Op. Atty. Gen. 201 (1962) (recordation tax).

For the foregoing reasons, we conclude that a county board of education is not an entity of the State (or, more specifically, a unit of the Executive Branch of State government) for purposes of the WBL.[27]

---

[27] We note further support for this conclusion found in an advice letter (addressing the applicability of the Maryland Funding Accountability and Transparency Act (the "Act") to county school boards) from the Opinions and Advice Division of the Maryland Office of the Attorney General stating:

> At the time it was enacted by the Legislature, the 2008 Act was codified as [S.F.P.] § 3-414 in a subtitle of the State Finance & Procurement Article that applied to "all units of the Executive Branch of State government including

It seems prudent to address whether WBL protection may extend otherwise to public school teachers. The WBL is located in the State Personnel and Pensions Article and renounces applicability to public school teachers. SPP §5-307 lists three categories of employees entitled to whistleblower protection: (1) Employees in State Personnel Management System, (2) Employees of the University System of Maryland, and (3) Employees of Morgan State University. A county school teacher does not fall within any of these categories. In the 38 years since the WBL was enacted originally in 1980, no effort has been made by the Legislature to extend WBL protection to employees outside of these categories. Moreover, former Maryland Attorney General J. Joseph Curran, Jr. opined that the legislative intent behind the WBL was to extend protection only to executive branch employees. 77 Md. Op. Atty. Gen. 147 (1992). We agree with General Curran's view. The plain language and legislative intent of the WBL extends no protection to county public school employees or teachers.

---

public institutions of higher education other than Morgan State University, the University System of Maryland, and St. Mary's College of Maryland. [S.F.P.] § 3-401(b) (2006 Repl. Vol.). The "Executive Branch" of State government consists of 19 principal departments, each of which includes a number of subordinate units. Annotated Code of Maryland, SG[] §§ 8-201, 8-202. *Local school systems such as MCPS are not included among those principal departments or their subordinate units. Accordingly, they are not units of the Executive Branch.* Thus, under the language of the statute, the 2008 Act does not apply to MCPS.

*Advice Letter to Senator Jamie Raskin and Delegate Alfred Carr, Jr.*, (3 November 2008) (emphasis added and citations omitted).

Perhaps the sharpest blade cutting against Donlon's claim is the Legislature's passage of the PSEWPA. At the outset, we highlight the pinnacle events as they relate to the progress of this case and enactment of the PSEWPA:

- 27 January 2015:
    - DBM rejects Donlon's claim that MCPS retaliated against him in contravention of the WBL.
- 1 September 2015:
    - ALJ affirms the DBM.
- 26 April 2016:
    - The circuit court reverses the ALJ's decision.
- 24 May 2016:
    - MCPS appeals the circuit court's judgment to the Court of Special Appeals.
- 9 February 2017:
    - PSEWPA (H.B. 1145; there was no cross-filed Senate bill) was read, for the first time, before the House Committee on Ways and Means.
- 20 March 2017:
    - PSEWPA was read, for the first time, before the Senate Committee on Finance
- 25 May 2017 :
    - Governor Lawrence Hogan signs the PSEWPA into law.
- 30 August 2017:
    - The Court of Special Appeals reverses the circuit court's ruling and finds no WBL law protection for Donlon.
- 1 October 2017:
    - PSEWPA goes into effect, without any provision for retrospective application to Donlon's case specifically or generally.

Donlon urges upon us the canon of statutory interpretation that calls upon a reviewing court to "interpret statutory provisions that are *in pari materia* (in other words, dealing with the same subject matter) consistently with each other," if possible. *Phillips*, 413 Md. at 623, 994 A.2d at 421. The underlying goal of *in pari materia* is to construe two common schemed statutes harmoniously to give full effect to each enactment.

32

*Gargliano v. State*, 334 Md. 428, 436, 639 A.2d 675, 679 (1994). Statutes "do not need to have been enacted at the same time, or necessarily refer to each other to be construed *in pari materia*." *See Farmers & Merchants Nat'l Bank v. Schlossberg*, 306 Md. 48, 56, 507 A.2d 172, 176 (1986).

Donlon would have us read concertedly the WBL and PSEWPA to give, what he believes, full effect to the WBL, by extending WBL protection to public school teachers. We do not believe the two statutes can be read harmoniously. To accept Donlon's urging would render nugatory portions of the PSEWPA.

The WBL and PSEWPA accord whistleblower protection to different classes of employees. Pointedly, the PSEWPA applies only to public school employees who are individuals "employed by a public school employer,"[28] and excludes specifically State employees from the definition of "Public School Employees." *Compare* Educ. § 6-901(b), (c), *with* SPP § 5-301, *and* SPP § 5-307.

Moreover, the remedial mechanisms of the statutes are not comparable. The WBL explains that a complainant may appeal to the OAH *only after* receiving a final decision from the DBM. SPP § 5-310. Furthermore, as MCPS notes correctly,

> [u]nder the WBL, an employee in the State Personnel Management System must elect to either file a complaint with the Secretary of the State[,] DBM[,] or [] file a grievance under Title 12 of the SPP. [SPP]§ 5-307(a). Likewise, employees of the University System of Maryland and employees of Morgan State University must elect to either file a complaint with the Secretary of the State DBM or, alternatively, file a grievance under Titles 13 and 14, respectively," of the Education Article. [SPP] § 5-307(b), (c).

---

[28] The PSWEPA defines "Public school employer" as a county board of education or the Baltimore City Board of School Commissioners. Educ. § 6-901(c).

The PSEWPA requires a public school employee to "exhaust any administrative remedies before instituting a civil action under this section." Educ. § 6-904(a). These administrative enforcement schemes, which (in Donlon's view) would have conclusively one method of enforcement applicable to State employees, and two methods applicable to public school employees, cannot be read harmoniously.

"The General Assembly is presumed to have intended that all its enactments operate together as a consistent and harmonious body of law, statutes will be interpreted, whenever reasonably possible, to avoid repeal by implication." *Farmers & Merchants Nat. Bank of Hagerstown v. Schlossberg*, 306 Md. 48, 61, 507 A.2d 172, 178 (1986). Providing relief to public school teachers through the WBL on the determination that they are State employees would run counter to the stated purpose of the PSEWPA.[29]

"Courts are inhibited, however, in their exercise of judgment as to how to effectuate the will of the Legislature." *Lafarge*, 443 Md. at 284, 116 A.3d at 504. Fortunately for us here, the will of the Legislature was illuminated during testimony before the Maryland General Assembly regarding the proposed PSEWPA.

Delegate Jimmy Tarlau (D., District 47A, Prince George's County), a sponsor of H.B. 1145 (2017), which became the PSEWPA, testified before the House Committee on

---

[29] The fiscal and policy note to H.B. 1145 (2017) states that the proposed PSEWPA aims to prohibit

> a public school employer from taking, or refusing to take, any personnel action as reprisal against a public school employee because the employee discloses or threatens to disclose unlawful behavior; provides information or testifies for an investigation of unlawful behavior; or objects to or refuses to participate in unlawful behavior.

Ways and Means stating that he "had assumed there was whistleblower protection for [public school employees] but found out there is no such protection. The [PSEWPA] would seem to address that issue."

Angela Wolf, a Montgomery County public school teacher, testifying before the same Committee in support of the PSEWPA, informed the legislators of a case that sounds remarkably like Donlon's, stating:

> most recently, a high school teacher at one of the wealthiest schools, in a nationally ranked county here in Maryland, reported deceptive practices. The school was awarding students credit for classes being advanced placement when the curriculum taught in no way met the AP criteria set forth by the College Board. Not having protection, the teacher was retaliated against. But again, who is damaged most by this deceptive practice? Students. . . . [The PSEWPA gives public school teachers] a defense tool . . . to expose waste, fraud, and abuse.

Notably also, John R. Woolums, Esq., a representative from MABE,[30] testified in opposition to H.B. 1145 stating:

> why [] single out a public school employees for a standalone whistleblower protection act? The questions that flow from that focuses on the fact that this law does and does not track the [WBL], which has what we view to be tighter and more well-defined terms and procedures relative to reporting to the Attorney General's Office in certain instances and a number of other instances. [] *That leads to questions about why wouldn't the inclination be to add school employees or other public employees in the State to the* [*WBL*] *to broaden the scope of that existing statute.*

(emphasis added). Mr. Woolums maintained that the PSEWPA was unnecessary because the General Assembly need only amend the WBL to add public school employees to its

_____

[30] While MABE opposed initially the PSEWBA, it, nevertheless, submitted an *amicus curiae* brief here supporting MCPS's contention that county boards of education, and by extension public school teachers, are not covered by the WBL.

35

coverage. Implicit in this view, the WBL did not extend protection to public school teachers in its un-amended form.

Delegate Tarlau, in response to Mr. Woolums' testimony, noted that the proposed PSEWPA is "modeled after the [Maryland State Whistleblower Act for Healthcare Employees] . . . [The PSEWPA] covers people who are also not covered by the [Collective Bargaining Agreement rules]." Before the Senate Committee on Finance, Delegate Tarlau testified that the proposed PSEWPA "gives protection for public school employees. Maryland has also a State whistleblower law for all State employees *but not* public school employees." Mr. Woolums withdrew his opposition to the proposed PSEWPA before testimony was taken before the Senate Committee on Finance. Moreover, the fiscal and policy note to H.B. 1145 states that the current status of Maryland law "affords licensed or certified health care employees *and State employees similar whistleblower protections*." (emphasis added). The note makes no mention of any existing whistleblower protection laws applicable to public school teachers or employees. Additionally, the Legislature, in enacting the PSEWPA, made no effort to express an intention that retrospective effect be extended to Donlon or his claim.[31]

---

[31] Neither Donlon's petition for certiorari nor his briefs posed any question (or argument) regarding whether his present claims of retaliation could be brought under the PSEWPA by amendment of his papers filed in the present action or anew in an as-yet unfiled action regarding the alleged retaliation. Consequently, MCPS had no opportunity to research or respond appropriately to such a contention.

In *Kopp v. Schrader*, No. 72, Sept. Term 2017, ___ Md. ___, ___ A.2d___ (21 June 2018), we explained that

> [t]his Court, in several cases, [] distinguished between the raising of a new issue, which ordinarily is not allowed, and the raising of an additional argument, even by the Court, in support or opposition to an issue that was

Thus, the rhetorical question bandied about at oral argument, why was the PSEWPA necessary if the WBL covered county public school employees, can be answered with confidence. The Legislature was of the view that the PSEWPA was needed because the WBL did not extend whistleblower protection to public school teachers.

## II. **Does Judicial Estoppel Have Any Role In This Case? (Spoiler – No.)**

Donlon maintains that MCPS should be estopped from arguing that it is not a State agency because "MCPS regularly insists that it is a state agency that can assert sovereign immunity to defend against a teacher suing it for violations of 42 U.S.C. § 1983." Thus, MCPS cannot disclaim that position now merely out of convenience. Moreover, Donlon urges that the Court of Special Appeals erred in applying a rigid set of elements to determine whether judicial estoppel should apply. Notably, that court deviated from the Supreme Court's explanation that the judicial "estoppel doctrine is equitable and thus cannot be reduced to a precise formula or test." *Zedner v. United States*, 547 U.S. 489, 504, 126 S. Ct. 1976, 1987 (2006). MCPS ripostes that Donlon's argument is counter-

---

raised, which is allowed. *See Crown Oil v. Glen*, 320 Md. 546, 560–61, 578 A.2d 1184[, 1990] (1990); *Medical Waste v. Maryland Waste*, 327 Md. 596, 604–05, 612 A.2d 241[,245] (1992); *O'Leary v. Shipley*, 313 Md. 189, 196, 545 A.2d 17[, 20] (1988).

For the reasons explained above, the Court will not wade further into this thicket regarding unraised, un-briefed, and scantily mentioned questions regarding statutes of limitation or retrospective application of a new law to litigation pending on the effective date of the law, in the face of a legislative record that is devoid of legislative intent that the PSEWPA be given retrospective effect (and especially where the Legislature was made aware apparently during the pendency of H.B. 1145 of Donlon's claims).

factual, given the differing contextual natures surrounding county boards' assertions of either State or local stature.

The ALJ concluded that the "OAH does not have jurisdiction to hear the merits of [Donlon's] WBL claim . . . [because Donlon] is not an employee of the Executive Branch of State Government, and therefore, cannot bring a claim pursuant to the [WBL]." The ALJ, in response to the parties' arguments relating to judicial estoppel, noted that once the OAH determined that it lacked jurisdiction to hear the case, "all other issues raised by the parties with respect to this matter are moot." On review of the ALJ's decision, the circuit court submitted that if it "concluded[,] for purposes of the [SPP] article[, Donlon] a [S]tate employee, [it does not] have to get to the question of estoppel. . . ." The circuit court concluded that Donlon was a State employee, and found ultimately extraneous the need to determine whether judicial estoppel was applicable.

Judicial estoppel is a common law doctrine and not a matter of federal or State constitutional law. *See generally Kramer v. Globe Brewing Co.*, 175 Md. 461, 469, 2 A.2d 634, 637 (1938)).[32] Donlon's reliance on United States Supreme Court cases is, therefore,

---

[32] *Kramer* discussed eloquently the purpose of the judicial estoppel:

If parties in Court were permitted to assume inconsistent positions in the trial of their causes, the usefulness of courts of justice would in most cases be paralyzed; the coercive process of the law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all men, honest and dishonest, are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come or are brought before them. It may accordingly be laid down as a broad proposition that one who, without mistake induced by the opposite party, has taken a particular position deliberately in the course of litigation, must act consistently with it; one cannot play fast and loose.

175 Md. 461, 469, 2 A.2d 634, 637 (1938).

unpersuasive. Maryland cases on judicial estoppel become paramount. We utilized quite

recently the same three-part test, outlined by the intermediate appellate court in *Donlon*, in

*Bank of New York Mellon v. Georg*, 456 Md. 616, 175 A.3d 720 (2017), and, in *Blentlinger,*

*LLC v. Cleanwater Linganore, Inc*., 456 Md. 272, 173 A.3d 549 (2017). We do so here as

well. Before judicial estoppel will be used to foreclose a party's argument, three

circumstances must exist:

> (1) one of the parties takes a [ ] position that is inconsistent with a position it took in previous litigation, (2) the previous inconsistent position was accepted by a court, and (3) the party who is maintaining the inconsistent positions must have intentionally misled the court in order to gain an unfair advantage.[33]

---

[33] While we will not discuss at length the third element of the test, we correct an argument made by Donlon. He asserts, in his reply brief, that he

> does not concede that a required element of judicial estoppel is an "intent to mislead the court," because such an element is not in-line with the purposes of judicial estoppel as set out by this Court, it is not consistently followed by this Court, and it is not acknowledged in practice by this Court. In light of the fact that this Court has not addressed this element directly, coupled with the recently expanded scope of the first element–which falls in greater alignment with the viewpoint of other courts, including the Supreme Court– the third element of judicial estoppel should require only that a party "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001).

Donlon cites no reported Maryland case adopting this reasoning. To the contrary, we have addressed the third element in both *Georg*, 456 Md. at 664, 175 A.3d at 747 ("there is no evidence in the record to support a conclusion that Respondents maintained inconsistent positions to intentionally mislead either Judge Alexander or Judge Glass to gain an unfair advantage . . . The record simply does not contain any evidence of an intent to mislead Judge Glass in the current litigation, whether to gain an unfair advantage or otherwise"), and *Blentlinger*, 456 Md. at 298, 173 A.3d at 564 ("there is no evidence whatsoever in the record that the County intentionally misled the court to gain an unfair advantage."). We find no evidence in the record before us that MCPS misled this Court, or any lower tribunal, to gain an unfair advantage in these proceedings.

*Georg*, 456 Md. at 625, 175 A.3d at 724–25 (quoting *Dashiell v. Meeks*, 396 Md. 149, 170, 913 A.2d 10, 22 (2006) (citation omitted); *Blentlinger*, 456 Md. at 297, 173 A.3d at 563. Judicial estoppel is "a principle that precludes a party from taking a position in a subsequent action inconsistent with a position taken by him or her in a previous action." *Dashiell*, 396 Md. at 170, 913 A.2d at 22. The doctrine is necessary and deployed "to protect the integrity of the judicial system from one party who is attempting to gain an unfair advantage over another party by manipulating the court system." *Dashiell*, 396 Md. at 171, 913 A.2d at 23.

Contrary to Donlon's contention that "ambiguity exists as to whether judicial estoppel applied to inconsistent legal as well as factual positions," we explained in *Georg* that the inconsistency may be either factual or legal; "i.e., the application of judicial estoppel is not limited to situations where a party takes inconsistent factual positions only." *Georg*, 456 Md. at 654, 175 A.3d at 742; *see also Dynacorp Ltd. v. Aramtel Ltd*., 208 Md. App. 403, 472, 56 A.3d 631, 672 (2012), *cert. denied*, 430 Md. 645, 62 A.3d 731 (2013) (the court stated that judicial estoppel applies when a party takes an "inconsistent position—either legal or factual—in an earlier litigation[.]" (citation omitted)).

In light of our recent elaboration in *Georg* and *Blentlinger* on judicial estoppel, it is unnecessary to peel away further the layers of the doctrine's onion when the first prerequisite that must exist for its application is not satisfied here. Donlon argues that "the position that MCPS is an agency or arm of the State for Eleventh Amendment sovereign immunity is in direct contrast with the position MCPS takes in the case at bar." Donlon is incorrect. As explained *supra*, the contention that an entity is immune from suit on the grounds of sovereign immunity resulting from its State stature is not inconsistent with the

40

assertion that county boards are neither units of the Executive Branch of our State government, nor entities of the State, for purposes of the WBL.[34]  These are quintessential questions of law.  County school boards have both State and local characteristics, and the appropriate designation of a county board (be it State versus local) depends on the context of the board's particular authority or function under the microscope. *See Beka*, 419 Md. at 212, 18 A.3d at 901 (county boards of education are hybrid in nature); *Clauss*, 181 Md. at 520, 30 A.2d at 782 ("it is not necessary for the purposes of the present case to determine whether in all cases the Board of Education of Anne Arundel County is an agency of that County. It may, for some purposes, be an agency of the State."); *Dean*, 71 Md. App. 92, 523 A.2d 1059 (1987) (County boards of education have a "peculiar hybrid nature.").

Estopping MCPS from claiming its local status for present purposes could have untoward future implications in imagined and unimaginable other litigation contexts.  We share the concerns iterated by MCPS:

> [A] ruling that MCPS is estopped from arguing that it is not a State agency would have perverse consequences for Maryland's county boards of education. The majority of, if not all, local boards of education have asserted Eleventh Amendment immunity at one time or another.  If having done so estops them from disclaiming State agency status, then they would [not] be able to assert their predominantly local character in any other litigation.

(quotation marks committed).  Judicial estoppel is necessary "to protect the integrity of the judicial system." *Dashiell*, 396 Md. at 171, 913 A.2d at 23.  We do not feel snookered by MCPS in this case. The integrity of the judicial system remains intact.

---

[34] Each county board of education in Maryland is a "body politic and corporate" which may "sue and be sued," Educ. § 3-104, reflecting further that county boards of education are discrete legal entities from the State for many purposes.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**